**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 15, 2012

# In the Court of Appeals of Georgia

A12A0354. WILLIS v. THE STATE.                                      AD-014C

ADAMS, Judge.

Early Willis, Sr. appeals the trial court's denial of his motion for new trial following his conviction by a jury of three counts of aggravated assault, three counts of possession of a firearm during the commission of a crime, and two counts of possession of a firearm by a convicted felon.[1] We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that on September 27, 2008, Early Willis began firing a shotgun at his grandnephew

---

[1] The jury acquitted Willis of one count of aggravated assault and one count of possession of a firearm during the commission of a crime.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Jacoby Jackson in front of a house on Pearl Drive in East Macon. Jackson began running, and Willis followed in his truck, with his brother, Jerry, riding in the passenger seat. Willis stopped in front of a store and shot at Jackson again across Jeffersonville Road, a four-lane road in Bibb County. A passing motorist saw Willis shooting and another man running away on foot, holding his side. Willis got back in his truck and drove to another nearby store. The motorist followed while calling 911 on his cell phone to report the incident.

At the store, Willis parked by another car, got out and began drinking what appeared to be moonshine, while his brother ran into the woods. As the sound of police sirens grew closer and closer, Willis also ran into the woods. At some point, the motorist removed Willis's keys from his truck. Willis returned, demanding his keys (which the motorist kept hidden), and retrieved the shotgun from the truck. At that point, the police arrived and Willis again ran into the woods. Officers discovered him a short time later lying in the woods near a shotgun and placed him into custody. Police later discovered Willis's fingerprint on the shotgun. One of the arresting officers testified that Willis smelled like he had been drinking. At trial, both the motorist and another witness identified Willis as the man who shot at Jackson at the store.

After Willis was released on bond after this incident, he went to the Jones County Sheriff's Department on October 2, 2008 at the request of Investigator Calvin Pitts, who had told Willis's bondsman that he needed to talk to Willis about the shotgun seized at the time of Willis's arrest. The gun previously had been reported as stolen in a Jones County burglary. When Willis arrived, Pitts and another officer, Kenny Gleaton, took him to an interview room, but Pitts testified that Willis was not under arrest and in fact, Willis left immediately after he finished talking with Pitts. During their conversation, Willis told the officers that he had fired his shotgun at the house on Pearl Drive and again toward a tree at the store on September 27, 2008 because he was mad that Jackson had stolen his cell phone.[3]

Subsequently, on April 30, 2009, Jackson's mother, Regina Smith, went to her cousin's house to check on a car the cousin was repairing. Willis was also there and words were exchanged between the two after Willis accused Regina of "snitching" in connection with Jackson's shooting. Regina walked away and began to call 911. Willis then charged at Regina, and her husband, Antonio Smith, intervened saying that Willis had already shot his son and he would not let him hurt his wife. Antonio

---

[3] On another occasion, Willis told his niece, Regina Smith, that he shot Jackson, who was her son, because Jackson had taken his cell phone.

3

and Willis began to fight, while Regina got into her car and began to drive away because she was frightened. After others had broken up the fight, Willis went to his car and got a handgun. When Antonio saw the handgun, he began to back off, but Willis began shooting at Antonio as he ran away, striking him in the head. Regina continued to drive away as her husband ran after her. When she later stopped to let her husband in the car, she stepped outside the car, and Willis began to shoot again. Regina jumped back in her car and drove to get help for Antonio. Willis and his wife followed them in his truck until the police intercepted them. The officers placed Willis under arrest and seized a gun from under the truck seat, where Willis told them they would find it.

The defense presented a number of witnesses who testified that Antonio Smith had started the fight on April 30, 2009, but each of them, including Willis's wife, testified that Willis shot at Antonio after the fight had stopped and when Antonio was running away.

Willis also testified and stated that it was his brother who shot Jackson on September 27, 2008, and his brother threw the shotgun down near where the police found Willis. Although Willis admitted telling Pitts that he had shot the gun that day, he testified that he was just telling the officer what he wanted to hear and that his

statement was a lie. With regard to the shooting on April 30, 2009, Willis said that he got the gun after others had broken up the fight and when Antonio followed him to the truck and indicated that he was not through with him. When Willis got the gun, Antonio ran around the truck and Willis followed and "ran him in between the car[s]." He said that Antonio was injured when he fell and hit a tire stem. Willis said on direct examination that he emptied the gun into the ground at that point, but on cross-examination, he first said that he shot the gun into the air and then said that he shot into the ground. When presented with this contradiction, he stated that he shot the first shot in the air and the remaining three into the ground. But Willis said that he never shot Antonio and never shot at the Smiths' car.

1. Willis asserts that this evidence was insufficient to support any of his convictions. In an appeal from a criminal conviction, this Court must

> view the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

5

(Citations omitted.) *Rankin v. State,* 278 Ga. 704, 705 (606 SE2d 269) (2004).

Willis asserts that the State failed to prove beyond a reasonable doubt that he shot at Jackson because he contends that the witnesses mistakenly identified him as the shooter, instead of his brother. Although Willis testified that his brother was the shooter, two witnesses, one who had never seen Willis before and one who had known him all his life, each identified Willis as the one who shot at Jackson at the store that day. Additionally, Jackson told police the day of the incident that Willis had fired the shotgun at him at the house and later at the store, and Willis admitted to the Jones County officers that he had fired the shotgun in both locations. We find, therefore, that the evidence was sufficient to support Willis's conviction of the charges alleged in connection with the incident on September 27, 2008. See *Armour v. State*, 290 Ga. 553, 554 (1) (722 SE2d 751) (2012). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (Citation omitted)).

Willis also asserts that the State failed to prove that he was guilty beyond a reasonable doubt of the charges filed in connection with the April 30, 2009 incident because he contends that he was acting in self-defense in firing his gun at Antonio

6

Smith. He notes that his witnesses testified that Antonio began the fight and had to be pulled off him at least twice.

"A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force. . . ." OCGA § 16-3-21 (a). But "[j]ustification cannot be based on an assault which has ended . . . ." (Citation omitted.) *Cloud v. State*, 290 Ga. 193, 196 (2) (719 SE2d 477) (2011) ("mere fact that assailants are departing and could, theoretically, return and continue an assault does not mean that the person asserting justification is in imminent danger. [Cit.]"). Here, all the witnesses, even Willis himself, testified that the fight had ended at the time he got his gun. And it is undisputed that when Antonio saw the gun, he ran away and Willis chased after him shooting. Even if Antonio continued to mouth off after the fight ended, as Willis testified, no evidence exists that Willis was in any imminent danger at the time he got the gun and shot at Antonio. Thus, the evidence failed to support his claim of justification or self-defense. See Id.; *Muckle v. State*, 307 Ga. App. 634, 637 (1) (a) (705 SE2d 721) (2011) (the continued use of force after the "imminent danger justifying self-defense ha[s] passed" does not qualify as self-defense. (Citation and

7

punctuation omitted.)). Rather, the evidence established beyond a reasonable doubt that Willis was guilty of aggravated assault against Antonio Smith and of the related possession charges.

2. Willis further argues that the trial court erred in excluding evidence that Antonio Smith had, in the past, attacked his wife, Regina Smith. He asserts that this evidence was relevant to his defense of justification.

> Evidence of a victim's specific acts of violence against third parties is admissible when a defendant claims justification and makes a prima facie showing thereof, follows procedural requirements, and establishes the existence of the prior violent acts by competent evidence. To make a prima facie showing of justification so as to allow evidence of violent acts by the victim against third parties, the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself.

(Citations and punctuation omitted.) *Cloud v. State*, 290 Ga. at 195 (2). As we held in division 1, however, the evidence did not support Willis's claim of self-defense. Thus, even though he presented evidence that Antonio was the aggressor and threw the first punch in their fight, he failed to establish that he was honestly trying to defend himself when he shot Antonio after the fight ended and when Antonio was running away. Because he failed to make the requisite prima facie showing, the trial

8

court did not abuse its discretion in denying his request to admit evidence of Antonio's prior actions involving his wife. Id. See also *Collier v. State*, 288 Ga. 756, 757 (2) (707 SE2d 102) (2011).

3. Willis also contends that the trial court erred in denying his motion to sever the charges arising from the incident involving Jackson from the charges relating to the incident involving the Smiths.[4]

> When two or more crimes of the same general nature are committed
> against different persons, at different times and places, and are charged
> in separate counts of an indictment, severance is mandatory upon the
> defendant's motion if the crimes are joined *solely* because they are of the
> same or similar character. If the offenses are not joined solely because

---

[4] Willis also asserts that the trial court erred in failing to sever Charges 1, 2, 3, 5 and 8 from the remaining counts of the indictment, but no basis exists for severing the counts in this fashion. Count 1 charged Willis with aggravated assault for shooting at Jackson at the house and Count 2 alleged aggravated assault for shooting at Jackson at the store. Count 3 charged Willis with possessing a gun during the commission of the aggravated assault alleged in Count 1. Count 5 alleged aggravated assault for shooting Antonio Smith and Count 8 alleged possession of a firearm by a convicted felon in connection with Count 6, which alleged aggravated assault for shooting at Regina Smith. (The jury acquitted Willis of both Counts 6 and 8.) Thus, these counts involve both the September 27 and the April 30 incidents, as do the remaining counts, which were as follows: Count 4, possession of a firearm during the commission of the crime alleged in Count 2; Count 6, aggravated assault on Regina Smith; Count 7, possession of a firearm in connection with the assault on Antonio Smith; Count 9, possession of a firearm by a convicted felon on September 27, 2008; and Count 10, possession of a firearm by a convicted felon on April 30, 2009.

9

they are of the same or similar character, and evidence of one charged offense would be admissible as a similar transaction during trial on another charged offense, the trial court is vested with discretion in deciding whether to grant a motion to sever. In making this decision, the court must consider the number of offenses charged, the complexity of the charges, and the complexity of the evidence and determine whether the jury will be able to fairly and intelligently parse the evidence and apply the law with regard to each charge.

(Citations omitted and emphasis in original.) *Stepho v. State*, 312 Ga. App. 495, 500 (3) (718 SE2d 852) (2011). Therefore, "[w]hen in the sound discretion of the trial court, the number of offenses charged and the complexity of the evidence do not reasonably impinge upon a fair determination of the defendant's guilt or innocence as to each offense charged, a severance need not be granted." (Citation and punctuation omitted.) *Machiavello v. State*, 308 Ga. App. 772, 774 (2) (709 SE2d 28) (2011).

Although the crimes in this case occurred at different times and different places and involved different victims, they were connected by more than just their similar character. Both crimes involved Willis's family members, and the fistfight leading to the second crime occurred due to hard feelings arising from the first crime. Each crime would have been admissible as a similar transaction at a trial on the other

10

crime, given that in both crimes, Willis shot family members with firearms taken from his vehicle after becoming angry at them. "Where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying appellant's motion for severance." (Citation and punctuation omitted.) *Boatright v. State,* 308 Ga. App. 266, 274 (2) (707 SE2d 158) (2011). See also *Collins v. State*, 267 Ga. App. 784, 786 (2) (600 SE2d 802) (2004) (no abuse of discretion in denial of motion to sever aggravated assault charges against different victims because crimes conducted in a similar manner). "Moreover, this case was not so complex as to impair the jury's ability to distinguish the evidence and apply the law intelligently as to each offense." (Citations and punctuation omitted.) *Boatright v. State,* 308 Ga. App. at 274 (2). In fact, the jury acquitted Willis of the two charges arising from an alleged aggravated assault against Regina Smith. Under these circumstances, we find no abuse of discretion.

4. Willis next contends that the trial court erred in admitting the statement he gave to Investigator Pitts because the police failed to give him a *Miranda* warning; because he was coerced, tricked and induced by false promises into making the statement; and because he was not given the opportunity to obtain counsel in connection with the statement. Willis also contends that the video of the statement

11

should have been redacted to exclude statements by the officers that they did not believe his assertion that he found the allegedly stolen shotgun in the truck after he bought it.

> A suspect is not entitled to warnings under *Miranda v. Arizona,* 384 U.S. 436 (86 SC 1602,[16 LE2d 694]) [1966] . . . unless that suspect has been taken into police custody or has been deprived of freedom of action in another significant way. A trial court's findings as to whether a suspect was unlawfully questioned while in police custody, without being advised of his *Miranda* rights, will be upheld on appeal unless clearly erroneous.

(Citations and punctuation omitted.) *Sams v. State*, 239 Ga. App. 715, 717 (2) (521 SE2d 848) (1999). See also *Anguiano v. State*, 313 Ga. App. 449, 449-450 (721 SE2d 652) (2011) ("Whether one is in custody for *Miranda* purposes is a mixed question of law and fact and on appellate review, we will not disturb the findings of fact that underpin the trial court's legal conclusions made at a suppression hearing, unless they are clearly erroneous." (Punctuation and footnotes omitted.)).

(a) The trial court held a *Jackson v. Denno* hearing in connection with the statements Willis gave the police after his arrest in connection with the September 27,

12

2008 incident.[5] The evidence showed that following his arrest, Willis was given a *Miranda* warning by an investigator with the Bibb County Sheriff's Department and gave a short statement in which he denied shooting at Jackson and said that his brother Jerry fired the shotgun. He did not invoke his right to counsel at that time. After Willis was released on bond in Bibb County, he voluntarily came to the Jones County Sheriff's Department in response to Pitts's conversation with the bondsman. Pitts testified that Willis was not under arrest, that he was free to leave at any time, and that he was not threatened or promised anything.[6] Pitts and Kenny Gleaton spoke with Willis in an interview room. The taped interview indicates that Willis showed no reluctance in talking to the officers about the September 27, 2008 incident and that he was allowed to leave after he was questioned about the shotgun. The trial court concluded that Willis came to the Jones County Sheriff's Department voluntarily and that he engaged in a conversation with the officers in a non-custodial setting. The trial

---

[5] The *Jackson v. Denno* hearing was conducted by a different judge from the judge who presided at trial.

[6] Pitts read Willis his *Miranda* rights prior to questioning him about the stolen shotgun, albeit after he was asked what had happened on September 27, 2008, and Willis then signed a statement indicating that he had not been promised anything or threatened in connection with talking to the Jones County officers.

13

court found that a reasonable person in Willis's position "would not perceive that he or she was in custody."

We find that the "evidence supports the trial court's findings that [the] statement[ was] freely and voluntarily made, under noncustodial circumstances. [Cits.]" *Sams v. State,* 239 Ga. App. at 717 (2). See also *Beaudoin v. State*, 311 Ga. App. 91, 94 (3) (714 SE2d 624) (2011); *Jones v. State,* 278 Ga. App. 616, 617 (3) (629 SE2d 546) (2006). Thus, the trial court properly admitted the statement.

(b) Willis also asserts that the trial court erred in failing to redact the CD of his interview with the Jones County officers to exclude the officers' statements that they did not believe Willis. Although Willis raises several grounds on appeal for excluding the officers' statements, he failed to raise any of them below.[7] Instead, his counsel simply said that the statements "should not be in there" and "[w]e need to keep them out." Accordingly, he has waived appellate review of this issue. *Powell v. State*, 308 Ga. App. 489, 490 (1) (707 SE2d 877) (2011) (failure to object to evidence on particular ground waives it for appeal).

---

[7] Willis did not raise his redaction argument either in his motion to suppress the statement or at the *Jackson v. Denno* hearing.

14

In fact, Willis's counsel's request that the statement be redacted was based on a misrepresentation of the contents of the recorded statement. His counsel stated that "the officers started claiming that they think he stole it and they kept telling him he was guilty and all that." Our review of the CD reflects no such statement by the officers; to the contrary, the interview was handled in a very cordial manner. Willis told Pitt and Gleaton that he had bought the truck on September 2, 2008, and that he discovered the shotgun under the seat of the truck on September 27, 2008, the day of his arrest in connection with the Jackson incident, when he moved the truck seat forward to put something in the back. Willis told the officers that he did not know how the shotgun had gotten there. Gleaton said that he found it hard to believe that the man who had sold the truck would have left a shotgun inside and made no effort to retrieve it, so he wondered whether anyone else had access to the truck between the time that Willis bought it and the time he found the shotgun. Willis had already told Gleaton that he could not lock the truck, and he reiterated that he did not know how the gun got in the truck. Thus, Gleaton never said that he did not believe Willis; in fact, Willis never told the officers that the prior owner had left the shotgun in the truck. Rather, Gleaton simply questioned whether the prior owner would have

15

forgotten such a nice shotgun, and then explored with Willis other possibilities to explain how Willis could have found the shotgun 25 days after he bought the truck.

Accordingly, even if Willis had properly preserved this issue for appeal, we find no error.

5. Willis asserts that the trial court erred in denying his request to admit a certified copy of an indictment for a robbery charge that was pending against victim Jacoby Jackson. He argues that "the Georgia rules favors the admission of any relevant evidence, no matter how slight its probative value." Willis sought to introduce this evidence during his cross-examination of Jackson, but Jackson denied that he was the individual named in the indictment or that he robbed anyone. He said that he did not recall whether he had been indicted for robbing the named victim.

As a general rule, only evidence of a witness's prior *convictions* may be admitted for impeachment purposes. OCGA § 24–9–84.1 (a) (1). Thus, Jackson would not generally be subject to impeachment based on pending charges. *McClure v. State,* 278 Ga. 411, 413 (3) (603 SE2d 224 (2004) ("A witness cannot be impeached by instances of specific misconduct unless that misconduct has resulted in the conviction of a crime. . . .") (footnote omitted). Cf. *Carter v. State*, 289 Ga. 51, 55 (7) (709 SE2d 223) (2011) (no error in excluding indictment from evidence, even

where party ultimately convicted, because "[a]n indictment represents only accusations against a defendant, and is not in itself a conviction."). And though "[a] criminal defendant does have the right to cross-examine a witness concerning pending criminal charges against the witness for purposes of exposing a witness' motivation in testifying, e.g., bias, partiality, or agreement between the government and the witness," the indictment here was properly excluded because Willis's attorney never attempted to cross-examine Jackson in this manner. (Citation and punctuation omitted.) *Colzie v. State*, 289 Ga. 120, 123 (3) (710 SE2d 115) (2011). Thus, we find no error. See also *Pope v. State,* 178 Ga. App. 148, 149 (3) (342 SE2d 330) (1986) (certified copies of guilty pleas, indictments or sentences related to prior crimes are admissible only if they pertain to crimes concerning which testimony has been admitted and a foundation laid).

6. Willis next asserts that the trial court erred in failing to give a number of his requested jury charges.

(a) Willis asserts that the trial court erred in failing to give two of his requested charges on the issue of justification and his requested charge on mutual combat. Even assuming that the requested charges contain principles of law that were correct and pertinent, "it is not necessarily error to fail to charge it. We must look to the charge

17

as a whole to determine whether the court substantially covered the principles embodied therein or whether it was sufficiently or substantially covered by the general charge." (Citations and punctuation omitted.) *Bennett v. Moore,* 312 Ga. App. 445, 460 (4) (b) (718 SE2d 311) (2011). See also *Walker v. State,* 282 Ga. 406, 408 (2) (651 SE2d 12) (2007); *Mohamed v. State,* 276 Ga. 706, 710–711 (4) (583 SE2d 9) (2003).

Here, the trial court substantially covered the legal principles in these requested charges in its instructions on justification and self-defense, and the jury charge as a whole fairly presented the issues regarding Willis's defense. "It is well settled that the trial court is not obligated to instruct the jury in the exact language requested and that, where the same principle of law is covered in another instruction, failure to give the requested charge is not error." (Footnote and punctuation omitted.) *Buruca v. State*, 278 Ga. App. 650, 653 (2) (629 SE2d 438) (2006). See also *Milinavicius v. State*, 290 Ga. 374, 378 (4) (721 SE2d 843) (2012) (where charge as a whole fairly represented the issue of justification failure to use certain words in charge presents no ground for reversal).

(b) Willis also asserts that the trial court erred in failing to give his requested charge on the lesser offense of reckless conduct. Willis notes that he told the Jones

18

County officers that he shot at a house and a tree instead of shooting at Jackson. He argues that this evidence does not support a finding of aggravated assault with regard to Jackson. But at trial Jackson specifically repudiated his statement to the Jones County officers. He said that he lied and just told Pitts what he wanted to hear. Willis's defense at trial, as he testified, was that his brother shot Jackson and that all the witnesses who identified him as the shooter were lying. "A request to charge must be apt, a correct statement of law, and precisely adjusted to some theory in the case." (Citation and footnote omitted.) *Anderson v. State*, 264 Ga. App. 362, 365 (2) (590 SE2d 729) (2003). Here, the State asserted that Willis shot at Jackson intentionally and Willis asserted that he did not shoot at all. Thus, a reckless conduct charge was not supported by any theory of the case. Accordingly, the trial court was not required to charge the jury on reckless conduct as to charges from September 27, 2008. *Glover v. State*, 292 Ga. App. 22, 29-30 (5) (a) (663 SE2d 772) (2008).

We note that Willis does not argue on appeal that the reckless conduct charge was required with regard to the charges arising out of the April 30, 2009 incident. And as the trial court noted in explaining the rejection of Willis's proposed reckless conduct charge, Willis claimed justification as to those charges. By asserting this defense, Willis "conceded that his act was intentional, but asserted that he committed

19

the act for an excusable reason, such as self-defense." (Punctuation and footnote omitted.) *Emmanuel v. State*, 300 Ga. App. 378, 380 (2) (685 SE2d 361) (2009). But "[t]he crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another." (Punctuation and footnote omitted.) Id. Under these circumstances, the trial court correctly refused to give a reckless conduct charge.

7. Willis further argues that his sentence constitutes cruel, inhumane and unusual punishment. Willis was sentenced as a recidivist, as follows: 20 years on each of the three counts of aggravated assault to run concurrently with each other; five years on each of the three counts of possession of a firearm during the commission of a crime, to run concurrently with each other, but consecutively to the sentence for aggravated assault; and 15 years on each of the two counts of possession of a firearm by a convicted felon, to run concurrently with each other, but consecutive to the sentence for aggravated assault.

Each of these sentences was within the statutory limits for the crimes charged, OCGA § § 16-5-21 (b), 16-11-106 (b), 16-11-133 (b),[8] and "[a] presumption arises

---

[8] Willis had previously been convicted of possession of a firearm by a convicted felon.

20

when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment." (Citation and punctuation omitted.) *Middleton v. State*, 313 Ga. App. 193, 194 (721 SE2d 111) (2011).

> For a court to find a punishment so disproportionate as to be cruel and unusual under the Eighth Amendment, the punishment must fall within one of two classifications. See *Graham [v. Florida]*, —— U.S. at —— (II) (130 SC [2011] at 2021–2022[, 176 LE2d 825) (2010)]. First, a punishment may be unconstitutionally cruel and unusual in the rare circumstance where the defendant's sentence is "grossly disproportionate" to the underlying crime. Id., 130 SC at 2022. Second, a punishment is unconstitutionally cruel and unusual if it violates certain narrow "categorical restrictions" enunciated by the United States Supreme Court. *Graham,* —— U.S. at ——(II), 130 SC at 2021–2022.

*Middleton v. State*, 313 Ga. App. at 194. Because Willis's sentence does not fall into either of these two classifications, this enumeration is without merit.

*Judgment affirmed. Barnes, P. J., concurs. McFadden, J., concurs fully and specially.*

21

A12A0354. WILLIS v. THE STATE.

McFADDEN, Judge, concurring.

I concur fully in the majority opinion. I write separately to note, as to Division 7, that our discussion of cruel and unusual punishment addresses only federal constitutional law, because – although Willis invokes Ga. Const. of 1983, Art. I, Sec. I, Par. XVII – he suggests that the federal and state constitutional standards are identical. But they are not. See *Fleming v. Zant*, 259 Ga. 687, 690-691 (3) (386 SE2d 339) 1989); *Haygood v. State*, 225 Ga. App. 81 (483 SE2d 302) (1997). Willis does cite *Haygood*, supra, but he does not argue – and I do not see – any basis for reaching a different result under the state constitutional standard.