**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 13, 2014**

# In the Court of Appeals of Georgia

A13A2090. WINDHOM v. THE STATE.

MCFADDEN, Judge.

In *Windhom v. State*, 315 Ga. App. 855 (729 SE2d 25) (2012), we reversed Errol Windhom's[1] armed robbery conviction because of the improper admission of evidence. Windhom was retried and convicted of armed robbery a second time. He appeals this second conviction and sentence, arguing that the court erred by allowing a mentally incompetent co-defendant to testify. But he has not shown that the trial court abused its discretion in allowing the co-defendant to testify, given that the co-defendant was subsequently determined to be competent to enter a guilty plea.

---

[1] In the prior appeal, the appellant's name was spelled as "Windhom." In this appellate record, the appellant's name is sometimes spelled as "Windhom" and sometimes spelled as "Windham." We will refer to the appellant as Windhom, as we did in the prior appeal.

Windhom argues that the trial court erred in allowing a video recording to go out with the jury in violation of the continuing witness rule, but the video recording was original evidence not subject to the continuing witness rule. Windhom argues that the trial court erred in failing to give two requests to charge. We find that the trial court's instructions covered the principles Windhom requested to be charged. We reject Windhom's argument that the evidence does not support the conviction and that his sentence -- within the statutory range -- violates the United States and Georgia Constitutions. Accordingly, we affirm Windhom's conviction and sentence.

1. *The evidence was sufficient to support the conviction.*

When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's

verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citations and punctuation omitted).

Viewed in this light, the evidence, including the testimony of co-defendant Chris Graddick, shows that an armed robbery occurred at the A&Z Flower and Game Shop on May 19, 2009. Erroll Windhom played the game machines at A&Z almost every day. On the day of the robbery, after he was finished playing, he approached the counter and began a conversation with Melissa Ann Amin, an employee of A&Z. While they were talking, Windhom's phone rang, and he told Amin it was his little girl. Five to ten minutes later, Michael Shane Bedford and Chris Graddick entered the store; they had been in the store the day before and Amin recognized them. Bedford pulled a gun on Amin and threatened to kill her. He told Amin to empty her pockets and the cash register. He took the store's cordless phones, Amin's cell phone, and $700 to $900. The two men told Windhom to lay on the ground and locked Amin in the bathroom. Amin never saw either of the two men pull a gun on Windhom or take anything from him. When she left the bathroom ten minutes later, she saw that Windhom was gone and his red Volvo was no longer parked in his parking spot.

Graddick testified that Windhom drove him and Bedford to the store in his red Volvo. Windhom gave Bedford his gun. Windhom dropped off Graddick and Bedford

3

at the other side of the shopping center and then drove the car to A&Z, where he went inside. Graddick and Bedford waited several minutes for a telephone call from Windhom and then entered the store and committed the robbery. Graddick and Bedford exited the store, followed by Windhom, who drove them away. Bedford sat in the back seat and counted the money.

The security camera of a neighboring business made a video recording of the parking lot of A&Z, showing the three men arriving and leaving, and Graddick described the events as the video was played for the jury. On May 4, 2012, Graddick pled guilty to robbery by intimidation.

A person commits the offense of armed robbery when, "with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). Evidence was presented showing that Windhom drove the robbers to the scene, supplied the weapon, functioned as a lookout, and drove the getaway vehicle. "The evidence was sufficient to show that [Windhom] was a party to an armed robbery." *Windhom*, 315 Ga. App. at 858 (1).

2. *The trial court did not err in allowing Graddick to testify.*

Windhom argues that the trial court erred in denying his motion in limine to prevent Graddick from testifying because he was not competent. In support of his argument, Windhom introduced at trial a July 15, 2010 report by a psychologist who performed a court-ordered competency evaluation of Graddick and concluded that he was not competent to stand trial. But almost two years later, on May 4, 2012, Graddick entered a guilty plea to robbery by intimidation, at which time the trial court made a finding that he was, in fact, competent to knowingly, intelligently, and voluntarily waive his constitutional rights. The instant trial took place September 17-19, 2012. In denying Windhom's motion in limine, the trial court noted that no court had ever found Graddick to be incompetent; the only evidence of his incompetency was the psychologist's opinion. Windhom has not shown that the trial court abused its discretion in denying his motion in limine, given that Graddick was found to be competent two years after the psychologist's evaluation and only months before the instant trial occurred. See *Rawls v. State*, 315 Ga. App. 891, 892 (1) (730 SE2d 1) (2012) ("We review the trial court's denial of a motion in limine for an abuse of discretion.") (citation omitted).

3. *The trial court did not err by allowing the video recording to go out with the jury.*

Windhom argues that the trial court erred by allowing the video recording that Graddick narrated to go out with the jury, because the video recording was a continuing witness. But unlike a videotaped interview or a transcript of testimony, the video recording, which was admitted without objection,

> is independent and original evidence, in and of itself, and does not depend on the credibility of the maker for its value. It is a true depiction of the event. Therefore, since the video[recording] . . . was independent and original evidence, did not depend for its value solely on the credibility of the maker and was not a substitute for testimony, it was not subject to the continuing witness rule.

*Mathews v. State*, 258 Ga. App. 29, 31 (1) (572 SE2d 719) (2002) (citations and punctuation omitted).

4. *The trial court did not err by refusing to give Windhom's requested jury charges on a witness's motive for testifying and mistake of fact.*

(a) Windhom argues that the trial court should have given his requested charge on the motive of a witness to testify to enable the jury to evaluate the testimony of co-defendant Graddick. The record does not contain a copy of Windhom's written requests to charge, so we cannot determine the legal accuracy of the charge he argues should have been given. See *Carter v. State*, 263 Ga. 401, 403 (4) (435 SE2d 42)

6

(1993). However, although nothing in our record confirms it, defense counsel asserted at trial that his requests to charge were the same charges he had requested in Windhom's first trial. And in his prior appeal, we rejected his argument about this charge, observing that

> the court instructed on credibility of witnesses, the interest of a witness, impeachment, and motive of a witness. Our review of these charges shows that they substantially and adequately cover the principles contained in the requested charge.

*Windhom*, 315 Ga. App. at 861 (3) (b). The trial court gave these instructions in this trial as well. "The trial court's charge, as actually given, was full and fair and substantially covered all the legal principles relevant to the determination of [a witness's motive for testifying]." *Carter*, 263 Ga. at 403 (4) (citations omitted).

(b) Windhom argues that the trial court should have given his requested charge on mistake of fact. As noted above, the record does not contain a copy of Windhom's written requests to charge, so we cannot determine exactly what he requested on this issue or its legal accuracy. See *Carter*, 263 Ga. at 403 (4). However, in the prior appeal, we held that, although perhaps not reversible error, the better practice would have been to give Windhom's "requested charge on mistake of fact, that is that the [s]tate has the burden of showing that the defendant did not act as a result of a

7

mistake of fact." *Windhom*, 315 Ga. App. at 862-863 (3) (e). Because of this ruling, in the instant case the trial court gave instructions on criminal intent, mistake of fact, and the state's obligation to disprove affirmative defenses. The trial court explained that it would not label mistake of fact as an affirmative defense, but told defense counsel that he could argue that in closing.

Nothing in our record shows whether the mistake-of-fact charge Windhom requested in the instant trial is the same as the charge he requested in the first trial. We cannot determine how Windhom's requested charge varied from the charge actually given. But "[t]he trial court's charge, as actually given, was full and fair and substantially covered all the legal principles relevant to the determination of [the defense of mistake of fact]." *Carter*, 263 Ga. at 403 (4) (citation omitted). Consequently, Windhom has not shown error.

5. *Windhom's sentence does not violate the United States or Georgia Constitutions.*

Windhom argues that his 20-year sentence is grossly disproportionate to the nature of the offense, in violation of the United States and Georgia Constitutions. Windhom's sentence was within the statutory range for armed robbery. OCGA § 16-8-41 (b) ("A person convicted of the offense of armed robbery shall be punished by

death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years."). "[A] presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment." *Willis v. State*, 316 Ga. App. 258, 268 (7) (728 SE2d 857) (2012) (citation omitted). For a court to find a punishment so disproportionate as to be cruel and unusual under the Eighth Amendment,

> the punishment must fall within one of two classifications. See *Graham v. Florida*, 560 U. S. 48, 59 (II) (130 SC[t] 2011, 2021-2022, 176 LE2d 825) (2010). First, a punishment may be unconstitutionally cruel and unusual in the rare circumstance where the defendant's sentence is "grossly disproportionate" to the underlying crime. Id., 130 SC[t] at 2022. Second, a punishment is unconstitutionally cruel and unusual if it violates certain narrow "categorical restrictions" enunciated by the United States Supreme Court. *Graham*, 560 U. S. at 59 (II), 130 SC[t] at 2021-2022. Because [Windhom's] sentence does not fall into either of these two classifications, this enumeration is without merit.

*Willis*, 316 Ga. App. at 268 (7) (citations and punctuation omitted). And while Windhom does cite Ga. Const. of 1983, Art. I, Sec. I, Par. XVI and some Georgia cases "he does not argue . . . any basis for reaching a different result under the state constitutional standard." Id. at 269 (McFadden, J., concurring fully and specially).

9

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*