## S96A1247. DIXON v. THE STATE.
(475 SE2d 633)

SEARS, Justice.

Frank E. Dixon appeals from his conviction and life sentence for

---

murder, claiming that his defense counsel was inadequate and that the trial court committed reversible error by (1) denying Dixon's motion to suppress from evidence his statement to police, and (2) admitting evidence of a similar transaction committed by Dixon. Because we find no error in the trial court's evidentiary rulings and that Dixon received effective assistance from counsel, we affirm.

In late 1992, Walter Daily was stabbed to death in an Atlanta apartment.[1] The testimony taken from each of the three persons present in the apartment at the time of the stabbing showed that earlier that same day, Appellant Dixon had argued with an occupant of the apartment, and had left the apartment after cutting his right hand on some glass. Later that night, when the occupants were asleep, Dixon returned to the apartment and was admitted after he kicked and beat at the door. At the time Dixon entered the apartment, Daily was sleeping on the sofa. After Dixon entered the apartment, witnesses heard the impact of Daily being stabbed and his cries for help, and saw Dixon fleeing the scene on foot.

Several days later, Dixon was released into police custody from a hospital and was arrested. After waiving his *Miranda* rights, Dixon admitted having stabbed Daily after Daily grabbed his arm as he walked past the sofa where Daily was sleeping. However, at trial Dixon claimed that as he walked past the sofa, Daily caught him in a choke hold from behind and that he stabbed Daily in order to protect himself. The physical evidence introduced at trial did not show signs of a struggle at the murder scene. Further, the medical examiner testified that Daily died as a result of three stab wounds to his chest and abdomen. The wounds to Daily appeared to have been inflicted from above and there were defensive wounds on the posterior of Daily's right forearm.

At trial, the State presented evidence of a similar transaction that took place in November 1991, in which Dixon had stabbed Lee Padgett in the center of the chest with a knife after approaching Padgett on a street in Atlanta. The location of one of the wounds on Padgett's body was identical to one of the three wounds on Daily's body. The attack on Padgett had been unprovoked, and Dixon had

---

[1] The murder was committed on December 29, 1992. Dixon was indicted on charges of murder, felony murder, and aggravated assault on February 19, 1993, and the trial was held on May 31- June 7, 1994. On June 7, 1994, the jury returned guilty verdicts as to all counts, and Dixon was sentenced to life imprisonment for the murder conviction, with the felony murder and aggravated assault convictions merged into the murder conviction for sentencing purposes. Dixon filed a motion for new trial on July 5, 1994. The transcript was certified by the court reporter on August 29, 1994, and the new trial motion was denied on June 8, 1995. Dixon timely filed his notice of appeal with this Court on August 4, 1995, and amended said notice on January 11, 1996. The appeal was docketed with this Court on April 22, 1996, and submitted for decision without oral argument on June 24, 1996.

fled the attack against Padgett on foot.

1. The evidence adduced at trial, viewed most favorably to the jury's verdict, was sufficient to enable a rational trier of fact to find Dixon guilty beyond a reasonable doubt of the crimes of which he was convicted.[2]

2. Dixon claims that his counsel's failure to order a transcript of the preliminary hearing, interview a key witness, request a psychiatric evaluation, and pursue Dixon's alleged alibi concerning the similar transaction evidence all served to deny him the effective assistance of counsel that prejudiced his defense.

Regarding Dixon's allegation that counsel was deficient for failing to request a transcript of the preliminary hearing for impeachment purposes, Dixon has made no showing that such a transcript exists, or that if it did exist, it was unavailable to defense counsel and therefore had to be requested. Moreover, Dixon has not shown by the record that such a transcript, if it exists, contains statements that could have been used for impeachment purposes sufficient to cast doubt on the jury's verdict. Accordingly, Dixon has failed to carry his burden to show affirmatively by the record that counsel's performance was deficient and that Dixon was prejudiced as a result thereof.[3]

Regarding Dixon's second alleged instance of ineffective assistance, that defense counsel failed to interview a key witness, the record shows (1) that counsel attempted to speak with the witness, and (2) that the witness refused to speak with defense counsel. Hence, this allegation is meritless.

Dixon's claim that defense counsel failed to request a psychiatric evaluation in order to support a possible insanity or mentally ill defense is belied by the record. Our review of the record shows that prior to the commencement of trial, on Dixon's motion, the trial court ordered that a psychiatric examination be performed on Dixon by the psychiatrist requested by defense counsel.[4] Hence, contrary to Dixon's claim, defense counsel did obtain a court-ordered psychiatric evaluation. Based upon our review of the psychiatric reports contained in the record, all of which clearly indicate that Dixon was competent,[5] we think it likely that the evaluating psychiatrist's failure to testify at trial on Dixon's behalf is due to counsel's reasonable determination that such testimony would not be beneficial to the defense, indicating that Dixon had adequate counsel.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[4] The evidence of record showing the ordering of a psychiatric evaluation was ordered unsealed by this Court on June 25, 1996.

[5] See discussion in Division 3, infra.

Finally, regarding the claim that defense counsel was ineffective for failing to pursue an alleged alibi regarding the similar transaction evidence where Dixon stabbed Padgett, we find this allegation to be meritless because the record shows that Dixon admitted during cross-examination that he had in fact stabbed Padgett in an unprovoked attack, and Padgett identified Dixon as his attacker. Hence, even if we did believe that defense counsel was ineffective for failing to investigate Dixon's alleged alibi (and we do not so believe), no prejudice could possibly have resulted therefrom.[6] It follows that this enumeration is rejected as meritless.

3. Dixon claims that the trial court erred in denying his motion to suppress a statement he made to police after being released into police custody directly from a hospital psychiatric unit, in which he admitted having stabbed Daily. The record shows that after the stabbing, Dixon appeared at Grady Hospital's psychiatric ward, complaining of paranoia, anxiety, and suicidal thoughts. After being evaluated at the psychiatric ward, Dixon informed hospital staff members that he had stabbed someone, and that he wished to contact the police in order to discuss the stabbing. He was released to police custody with a doctor's approval and instruction that he be placed on a suicide watch, be given prescribed medication for flu-like symptoms, and be observed for possible alcohol withdrawal. On appeal, Dixon argues that the trial court erred in denying his motion to suppress, "based on the background of the accused, the totality of the circumstances, and the lack of Appellant's full awareness."

The testimony introduced before the trial court at the *Jackson v. Denno* hearing on Dixon's motion to suppress leads us to conclude that the trial court did not err in denying the motion. The record shows that Dixon acknowledged in writing that his statement was given freely and voluntarily. Moreover, at the time of giving his statement, Dixon waived his *Miranda* rights by executing a waiver of rights form. The detective who took the statement from Dixon testified at the *Jackson v. Denno* hearing that Dixon appeared stable, and understood what was occurring when he made his statement. Factual and credibility determinations made by a trial court after a *Jackson v. Denno* hearing will not be disturbed on appeal unless they are clearly erroneous.[7] The record supports no such conclusion here. Rather, the record, when viewed as a whole, is consistent with the trial court's conclusion that the statement was voluntarily and knowingly made. In addition to the detective's testimony, the psychiatric evaluations performed before Dixon was released into police custody

---

[6] See *Strickland*, supra.
[7] *Cox v. State*, 248 Ga. 713 (285 SE2d 687) (1982).

show that the medical professionals treating Dixon diagnosed him as alert, aware, oriented, intelligent, and able to care for himself. Therefore, this enumeration is rejected.

4. Finally, we reject Dixon's claim that the trial court erred in admitting evidence of a November 1991 unprovoked knife attack on Padgett as evidence of a similar transaction. Dixon claims that the evidence improperly went to show a general criminal propensity rather than an issue relevant to the case. The evidence introduced at trial showed that in both the prior similar transaction and the attack on Daily, (1) the victim was stabbed at the base of his sternum, (2) the victim was barely known to the assailant, (3) the assailant fled on foot after the attack, and (4) the attack was unprovoked. We find that the evidence of the similar transaction admitted in this case was relevant, as it tended to show a bent of mind and intent in initiating the attack that rebutted Dixon's claim of self-defense.[8] Furthermore, Dixon admitted on cross-examination that he was the assailant in the similar transaction, and the victim of the earlier attack, Padgett, identified Dixon as the assailant. Thus, there was sufficient evidence that Dixon was the perpetrator of the prior act.[9] Furthermore, given the unique characteristics of both knife attacks, there was a logical connection between the two offenses, and they were sufficiently similar that the proof of the prior attack tended to establish the attack for which Dixon was convicted.[10] Accordingly, we find that the trial court did not err in admitting the similar transactions evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 1996.

*Patrick G. Longhi,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph F. Burford, Assistant District Attorney, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

[8] See *Gentry v. State,* 250 Ga. 802, 803 (301 SE2d 273) (1983).
[9] *Williams v. State,* 261 Ga. 640, 642 (409 SE2d 649) (1991).
[10] Id.