## A98A0895. HASSAN v. THE STATE.
(500 SE2d 644)

ELDRIDGE, Judge.

Mamun Hassan was convicted for the offense of armed robbery by a DeKalb County jury and sentenced to ten years to serve. This appeal follows the denial of Hassan's motion for new trial.

The evidence showed that during the early morning hours of May 15, 1996, Hassan went into the Amoco Food Mart on East Ponce de Leon Avenue in DeKalb County and purchased a pack of cigarettes and a soda from employee Samson Wolde. Wolde was the only employee present at the time. Wolde knew Hassan because Hassan was a former employee. Wolde was unaware that Hassan's employment had been terminated.

After smoking a cigarette, Hassan told Wolde that he was "going to fuck up this goddamned store" because he was not working there anymore. Then Hassan began printing money orders on the store's

money order machine. When Wolde questioned Hassan's actions, Hassan pointed a gun at Wolde. Hassan demanded that Wolde fold the money orders. Hassan demanded that Wolde give him a bag and the telephone. Hassan pulled a key to the register at which he had formerly worked and took the money out of it. Hassan then left in a light green Mazda. Wolde pushed a button under the cash register to summon the police.

The manager of the Amoco Food Mart, Akbar Khwaja, was called to the scene by the police. Khwaja gave Detective Ice of the DeKalb County Police Department a sample money order, printed from the same machine as those taken by Hassan, and an accounting of the serial numbers on the money orders that Hassan had taken. Khwaja testified that 31 money orders were taken which were numbered 673 through 703. Khwaja further testified that Hassan had the code for the money order machine and knew how to work the machine. Wolde, on the other hand, had never learned how to use the money order machine, because money orders were not sold during his shift. Khwaja voided the money orders and notified the money order company about the robbery.

Shortly after 2:00 p.m. on May 15, 1996, Hassan deposited eight money orders, worth $4,000, into his account and took $2,000 in cash back. The money orders were made out to the appellant and purportedly signed by someone with the last name Uddin; the first name of the purported purchaser was illegible. Those eight money orders had the same serial numbers as some of those taken from the Amoco store.

Subsequently, Marietta Police Officer Tony Langley found Hassan hiding in a back bedroom closet of a Marietta apartment. A gun and ammunition were lying on the top shelf of the closet. Hassan admitted that the gun was his. The following day, Wolde positively identified Hassan from a photographic lineup. Wolde testified that the gun seized from Hassan looked like the one Hassan used in the armed robbery.

1. In his first enumeration, Hassan contends that his trial counsel was ineffective.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990). "To establish a claim of ineffective assistance of counsel, [Hassan] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). [Hassan] must establish both the performance and the prejudice compo-

nents of the *Strickland* test." *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). "A conviction will not be reversed on the basis of ineffective assistance of counsel unless counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citations and punctuation omitted.) *Cunningham v. State*, 222 Ga. App. 740, 743-744 (2) (475 SE2d 924) (1996); *Strickland v. Washington*, supra at 669.

(a) Hassan contends that his trial counsel was ineffective because he injected Hassan's character into evidence knowing that the State had evidence to impeach the appellant's good character.

At trial, Wolde testified that Hassan said to him, "I'm going to fuck up this goddamned store." When Hassan testified, his counsel asked him, "Did you say any curse words to Mr. Wolde while you were there?" Hassan answered, "I don't curse." Hassan then testified, in response to questions by his trial counsel, that he was a Muslim, that he had never been convicted of a felony, and that he had a good reputation in the community.

The prosecution called Officer Frank Figueroa of the DeKalb County Police Department in rebuttal. Officer Figueroa testified that he had answered a shots fired call at an apartment in DeKalb County on February 9, 1996, some three months before the armed robbery which was the subject of this prosecution. Hassan, who was the one firing the shots, was present when Officer Figueroa arrived at the scene. Officer Figueroa said Hassan was very belligerent and kept telling Officer Figueroa and his sergeant that they were "motherfuckers." The trial court gave limiting instructions to the jury following Officer Figueroa's testimony.

At the motion for new trial hearing, Hassan's trial counsel testified that he asked the question for the purpose of rebutting Wolde's testimony and to bolster Hassan's credibility. Trial counsel testified that he expected Hassan to respond with "no" and did not expect him to expand his answer to "I don't curse." Trial counsel further testified that he had a copy of the police report involving Hassan's arrest by Officer Figueroa and was unaware from the report that the arrest involved cursing. "Trial strategy and tactics do not equate with ineffective assistance of counsel." (Citations and punctuation omitted.) *Ney v. State*, 227 Ga. App. 496, 499 (489 SE2d 509) (1997). Such tactical choice was not so clearly erroneous as to be ineffective.

(b) Hassan further contends that his trial counsel was ineffective because he failed to obtain records of how the Amoco store's video recorder worked and who operated it and failed to obtain a copy of the preliminary hearing transcript, which, Hassan contends, would have shown that the machine was not inspected by the police to determine if, in fact, it was not working properly. It is Hassan's con-

tention that the video recorder was intentionally turned off the night of the alleged robbery, so that Wolde could stage an alleged robbery to cover the fact that Wolde actually took the money orders and gave them to Hassan in payment of a debt.

The matter of the video recorder not working was covered in the trial of this case. Khwaja testified that there were video cameras in the store on the night of the robbery, and the video recorder was in his locked office. Khwaja further testified that he was the only one with the key to his office; Wolde did not have a key to his office. Khwaja testified that he and Detective Ice checked the video recorder together, but the recorder was not working. The light on the recorder was flashing, and the word "error" appeared. Khwaja went on to testify that the video recorder had stopped recording before midnight. On cross-examination, Khwaja testified that the recorder had stopped working before when there was a power surge, and that he had put a new tape in the recorder the previous day that should have lasted for a full day.

Detective Ice testified that he asked Khwaja at the time of the robbery if there were any videotapes of the incident. He further testified that he had inspected the video recorder with Khwaja and personally observed that the recorder was not working.

Hassan argues that the preliminary hearing transcript would have shown that Detective Ice did not inspect the video recorder, contrary to the trial testimony of both Detective Ice and Khwaja. However, there is nothing in the record to support Hassan's contention. "[Hassan] has made no showing that such a transcript exists, or that if it did exist, it was unavailable to defense counsel and therefore had to be requested. Moreover, [Hassan] has not shown by the record that such a transcript, if it exists, contains statements that could have been used for impeachment purposes sufficient to cast doubt on the jury's verdict. Accordingly, [Hassan] has failed to carry his burden to show affirmatively by the record that counsel's performance was deficient and that [Hassan] was prejudiced as a result thereof." *Dixon v. State*, 267 Ga. 136, 138 (475 SE2d 633) (1996); *Strickland v. Washington*, supra.

2. Hassan challenges the sufficiency of the evidence.

When reviewing a conviction, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). While Hassan testified that the money orders were given to him by Wolde in repayment of a loan, "it is the function of the jury, and not this Court, to resolve conflicts in the evidence. This Court determines only the legal sufficiency of the evidence adduced

below and does not weigh the evidence or assess the credibility of the witnesses." (Citation and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997). Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find Hassan guilty of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, supra.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 31, 1998.

*Hartley & Puls, Alton G. Hartley*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Keith E. Adams, Assistant District Attorneys*, for appellee.