**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 11, 2016**

# In the Court of Appeals of Georgia

A16A1091. RAY v. THE STATE                                    DO-038 C

A16A1126. RANDELL v. THE STATE.                              DO-045 C

A16A1178. BROWN v. THE STATE.                                DO-044 C

DOYLE, Chief Judge.

Danterrell Dandre Ray, Alex Donavon Randell, and Shakrystin Brinae Brown were each convicted of multiple offenses based on an armed robbery of a restaurant and its occupants. They were indicted and tried jointly, and we have consolidated their appeals for review.

In Case No. A16A1091, Ray appeals from his convictions on 43 counts (some of which merged for sentencing) including multiple counts of armed robbery,[1]

---

[1] OCGA § 16-8-41 (a).

kidnapping,[2] false imprisonment,[3] aggravated assault,[4] possession of a weapon during the commission of a crime,[5] pointing a pistol at another,[6] and theft by taking.[7] Following the denial of his motion for new trial, Ray contends that the trial court erred because (1) the evidence was insufficient to support the guilty verdict; (2) the trial court failed to sever the trial or exclude post-arrest statements made by his co-defendants; and (3) he received ineffective assistance of counsel.

In Case No. A16A1126, Randell appeals from his convictions on 43 counts for the same offenses, some of which also merged at sentencing. Randell challenges the denial of his motion for new trial on the grounds that (1) the evidence was insufficient to support the verdict; (2) he received ineffective assistance of counsel; (3) the trial court failed to sever the trial; and (4) the trial court erroneously allowed the State to ask leading questions.

---

[2] OCGA § 16-5-40 (a).

[3] OCGA § 16-5-41 (a).

[4] OCGA § 16-5-21 (b) (1).

[5] OCGA § 16-11-106 (b) (1).

[6] OCGA § 16-11-102.

[7] OCGA § 16-8-2.

2

Finally, in Case No. A16A1178, Brown appeals from her convictions on 43 counts for the same offenses, some of which also merged at sentencing. Brown challenges the denial of her motion for new trial on the grounds that (1) the sentencing scheme for armed robbery is unconstitutional on its face and as applied to her under *Apprendi v. New Jersey*;[8] (2) the elements of knowledge and intent were not properly charged nor was the evidence sufficient under *Rosemond v. United States*;[9] and (3) the evidence was insufficient to support the guilty verdict.

For the reasons that follow, we affirm the convictions in each case.

We begin with a general overview of the evidence presented at their joint trial. Construed in favor of the verdicts,[10] the evidence shows that in June 2012, Jonathan Hammonds visited Ahkeem Simmons's apartment and told Simmons about a robbery that Hammonds was planning with Ray. Hammonds expected the robbery to yield $70,000. A few days later, Hammonds, Ray, and Randell came by Simmons's

---

[8] 530 U. S. 466, 490 (IV) (120 SCt 2348, 147 LE2d 435) (2000) (holding that any fact, other than that of a prior conviction, that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt).

[9] __ U. S. __ (134 SCt 1240, 188 LE2d 248) (2014).

[10] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

3

apartment, and Ray asked Simmons to participate in the robbery. Ray explained that Brown was a hostess at the restaurant, and she had told him that the security cameras did not work and had given him the location of the manager's office where a substantial amount of cash would be stored. Ray asked Simmons to drive the getaway car, and Simmons agreed.

As the restaurant's midnight closing time approached, Simmons drove Ray, Randell, and Hammonds to the restaurant. They waited for Brown to call from within the restaurant to tell them when the customers had left. As Brown completed her closing duties, she ensured that the deadbolt on the front door remained unlocked. At the appropriate time, Ray, Randell, and Hammonds parked at the restaurant and exited their vehicle, all wearing black clothing and masks, with Ray carrying a backpack. Two other friends, Brittany Patterson and Jazmine Washington, had driven to the restaurant and parked outside to act as lookouts and to follow the getaway car to screen it from police.

Ray, Randell, and Hammonds entered the restaurant through the front door, and one pointed a gun at two workers, telling everyone to get down. The bartender secretly tripped the silent alarm as she lay down, and one of the robbers stole $150 in cash and a cell phone from her at gunpoint. Another gunman tied up an employee

with zip ties or duct tape and took his wallet at gunpoint. A gunman also stole money and a cell phone from another employee at gunpoint.

A third gunman went to the manager's office and pointed a gun at the manager. He forced her to open the safe, and he took the cash box located inside, also taking the money in the manager's purse and in the cash register. The gunman put all the stolen money into a backpack he carried. The gunman then ordered the manager at gunpoint to move from the office to the restaurant floor where the other employees were located. Also in the course of the robbery, the dishwasher was moved at gunpoint from the dishwashing area to the bar area floor, and his wallet was stolen by a robber. Brown, who still was present, was not robbed.

Ray, Randell, and Hammonds then left the restaurant and fled in the waiting cars driven by Simmons and Washington. As they drove to Simmons's apartment, Randell threw a stolen cell phone out of the window to avoid being tracked by police, and Ray threw a second stolen cell phone into the woods upon arrival. With the help of the phone's owner, police later tracked the second phone's location to the area of Simmons's apartment.

Everyone from the two cars gathered inside Simmons's apartment to count the money from the robbery. They were disappointed to find that instead of the $70,000

5

they expected, the had only stolen about $1,900. They divided the money between Simmons, Ray, Randell, Hammonds, Patterson, and Washington.

After investigating the crime scene and interviewing witnesses, police learned that Brown had left the front door unlocked and subpoenaed her cell phone records. Those records eventually led to an interview with Patterson, who had been in one of the vehicles during the robbery and who identified each of the perpetrators involved. Washington also confirmed the same information to police. After searching the vehicle driven by Simmons, police found a mask and bandana.

In a 52-count indictment, Brown, Randell, Simmons, Patterson, Washington, Hammonds, and Ray were accused of committing multiple offenses against multiple victims during their roles in the robbery. Ray unsuccessfully moved to sever his trial, and after declining plea offers, the defendants were tried jointly before a jury. The trial court directed not guilty verdicts as to seven counts, and the jury returned guilty verdicts on the remaining counts. The trial court denied each defendant's motion for new trial, giving rise to these appeals.

*Case No. A16A1091*

1. Ray contends that the evidence was insufficient to support the guilty verdict as to certain counts.

6

(a) *Kidnapping*. Ray first challenges two kidnapping counts. Citing *Garza v. State*,[11] Ray argues that the evidence failed to sufficiently demonstrate the asportation element of kidnapping as to the manager and the dishwasher. We disagree.

Decided in 2008, *Garza* addressed the elements of kidnapping:

A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will. Under [then] current Georgia jurisprudence, the element of "abducting or stealing away" the victim, known in legal parlance as "asportation," [could] be established by proof of movement of the victim, however slight.[12]

*Garza* abandoned the "slightness" threshold and instead adopted a four-part test to distinguish a kidnapping from an incidental part of another offense such as a robbery.[13]

---

[11] 284 Ga. 696 (670 SE2d 73) (2008), superseded by statute as stated in *Gonzalez v. Hart*, 297 Ga. 670, 672 (777 SE2d 456) (2015). See also OCGA § 15-5-40 (b) (2) (2009).

[12] (Citation and punctuation omitted.) Id. at 697 (1), citing former OCGA § 16-5-40 (a) (2008).

[13] See id. at 702 (1) (Courts must "assess four factors in determining whether the movement at issue constitutes asportation: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the

7

Nevertheless, "*Garza* has been superseded by statute for offenses occurring after July 1, 2009,"[14] such as the ones here, which occurred in 2012. The current and applicable statute reads as follows, in relevant part:

> (a) A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will.

> (b) (1) For the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.

> (2) *Movement shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; or (D) Is for the purpose of avoiding apprehension.*[15]

The dishwasher was moved at gunpoint from the dishwashing area to the front of the restaurant and ordered to lie down on the floor. Similarly, the manager was

_____

danger posed by the separate offense.")

[14] *Gonzalez*, 297 Ga. at 672, n. 3. See Ga. L. 2009, p. 331.

[15] (Emphasis supplied.) OCGA § 15-5-40.

8

moved at gunpoint from the manager's officer to the front of the restaurant and ordered to lie down on the floor. These movements were not merely incidental to the armed robbery because they made the completion of the armed robbery substantially easier by consolidating all of the restaurant occupants into one area and enhancing the perpetrators' control over the victims, thereby lessening the risk of detection and apprehension due to a victim's flight or attempt to contact police. Under these circumstances, and according to the applicable statutory definition of kidnapping, the evidence sufficed to support the kidnapping offenses as to the manager and dishwasher.[16]

(b) *False Imprisonment of C. G.* Ray also contends that the State failed to prove that he falsely imprisoned a certain victim, C. G., arguing that there was no evidence that the victim was confined or detained against his will. Under OCGA § 16-5-41 (a) "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Ray's argument ignores the testimony of two other victims who stated that

---

[16] See *Ward v. State*, 324 Ga. App. 230, 232-233 (1) (749 SE2d 812) (2013) (movement from one room of a residence to another during a rape was sufficient to constitute asportation).

9

the gunmen held C. G. at gunpoint, and he was not free to leave during the robbery.

When an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[17]

Based on the testimony from the other victims, Ray's argument fails.

(c) *Armed robbery of C. G.* Ray also challenges the sufficiency of the evidence as to armed robbery of C. G. Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon . . . ." Here, there was testimony from another victim that one of the three gunmen pointed a gun at C. G. and took money from him. This was

---

[17] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

10

corroborated by a second victim who saw a gunman point his gun at C. G. This evidence sufficed to show that C. G. was a victim of armed robbery.[18]

With respect to the identity of the perpetrator of the robbery against C. G., we note that

> a participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. The question of whether [a defendant] was a party to the armed robbery [is a question] for the jury to resolve.[19]

The evidence here showed that the three robbers wore masks to hide their identities. But there was also evidence that Ray was one of the three masked men who entered the restaurant to carry out the robbery and that Ray carried a pistol. Also, Ray was one of the initial planners of the robbery, and he recruited Simmons to drive. Ray

---

[18] See *Odle v. State*, 331 Ga. App. 146, 149-150 (1) (770 SE2d 256) (2015). See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

[19] (Citations and punctuation omitted.) *Hines v. State*, 320 Ga. App. 854, 857 (1) (740 SE2d 786) (2013).

threw a stolen phone into the woods to conceal the crime and avoid detection by police. Viewed in the light most favorable to the verdict, as is proper on appeal, this evidence was sufficient to support a guilty verdict against Ray for the armed robbery of C. G.[20]

2. Next, Ray contends that the trial court erred by failing to sever the trial or exclude post-arrest statements made by his co-defendants. Ray filed a motion to sever his trial, but the record does not reflect a particular ruling on his motion, and the trial was not severed. Pretermitting whether Ray waived his request for severance, we discern no reversible error.

Under OCGA § 17-8-4 (a), when multiple defendants are jointly "indicted for . . . [felonies] less than capital, . . . such defendants may be tried jointly or separately in the discretion of the trial court."

> It is incumbent upon the defendant who seeks a severance to show clearly that the defendant will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed. Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be

---

[20] See id. at 858 (1) (a); *Cantrell v. State*, 230 Ga. App. 693, 695 (1) (498 SE2d 90) (1998).

considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses. The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.[21]

In the order denying Ray's motion for new trial, the trial court found that the defendants did not have antagonistic defenses because they all took the position that they had no involvement in the robbery. None of the defendants on trial testified or presented evidence, so there was no defense theory presented by a co-defendant that was antagonistic to Ray's defense. Other than making the general allegation that Ray's co-defendants' defenses were antagonistic, he points to no specific evidence inculpating him and exculpating another co-defendant. The same is true of Ray's general allegation that the evidence overwhelmed the jury. Rather, the evidence showed that the defendants all played a role in a single robbery, not separate, unrelated offenses that might muddy the evidence as to a single defendant's offenses.[22]

---

[21] (Citation and punctuation omitted.) *Daniel v. State*, 285 Ga. 406, 407-408 (3) (677 SE2d 120) (2009).

[22] See id. at 408 (3) (a).

13

Ray also relies on *Byrd v. Wainwright*,[23] to argue that he was deprived of the benefit of his co-defendants' testimony, who were entitled not to incriminate themselves in their own trials. But Ray gives no specific showing or explanation of what that testimony would have been.[24] Further, there was strong evidence of Ray's participation in the robbery, and absent some other showing, Ray failed to demonstrate prejudice showing an abuse of the trial court's discretion in trying him jointly.[25]

Ray finally relies on *Bruton v. United States*,[26] to argue that his trial should not have included hearsay statements by his co-defendants that incriminated him and that he was denied his Sixth Amendment right to cross-examine those witnesses (who did not actually testify). "As an initial matter, the statements in question were . . . properly admitted under the co-conspirator exception to the hearsay rule."[27] There

---

[23] 428 F2d. 1017 (5th Cir. 1970).

[24] See id. at 1020 (defendant must make a clear showing as to what the co-defendant's testimony would have been).

[25] See *Avellaneda v. State*, 261 Ga. App. 83, 89 (581 SE2d 701) (2003).

[26] 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

[27] See *Favors v. State*, 296 Ga. 842, 844-845 (2) (770 SE2d 855) (2015); OCGA § 24-8-801 (d) (2) (E) (admissions shall not be excluded by the hearsay rule, and admissions include "statement[s] by a coconspirator of a party during the course

14

was independent evidence – testimony by Simmons that was subject to Ray's cross-examination – of Ray's planning of and participation in the robbery with his co-defendants.

> As to the Confrontation Clause issue, a defendant's Sixth Amendment right to be confronted by the witnesses against him is violated under *Bruton* when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime. *Bruton* thus applies only to out-of-court statements by non-testifying co-defendants that are "testimonial" in nature. A statement is testimonial if its "primary purpose was to establish evidence that could be used in a future prosecution." Here, [none] of the statements in question were testimonial in nature[, because] . . . statements by a co-conspirator made during and in furtherance of the conspiracy are not considered "testimonial" and therefore do not require any constitutional scrutiny under the Confrontation Clause.[28]

Accordingly, these statements were not a basis for severance of Ray's trial.

3. Last, Ray contends that he received ineffective assistance of counsel. We disagree.

---

and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy.").

[28] (Citations and punctuation omitted.) *Favors*, 296 Ga. at 845 (2).

To establish that his trial counsel was constitutionally ineffective, [Ray] was required to prove both deficient performance by counsel and resulting prejudice. To prove deficient performance, [Ray] had to demonstrate that counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. Because judicial scrutiny of counsel's performance must be highly deferential, the law recognizes a "strong presumption" that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption. To carry this burden, [Ray] must show that no reasonable lawyer would have done what his counsel did, or failed to do what his counsel did not do. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

Even if a defendant can prove that his counsel's performance was deficient, he must also prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a "reasonable probability" of a different result, which, the United States Supreme Court has explained, is "a probability sufficient to undermine confidence in the outcome." In

all, the burden of proving a denial of effective assistance of counsel is a heavy one.[29]

(a) *Failure to investigate case*. Ray generally asserts that his trial counsel performed deficiently by failing to adequately investigate the case and interview witnesses. But he does not identify which witnesses his trial counsel should have interviewed, what the interviews might have revealed that trial counsel did not already know, or what evidence should have been investigated further. At the post-trial hearing on Ray's motion for new trial, his trial counsel testified that he was unable to interview Ray's co-defendants (who did not testify) because they were represented by counsel.[30] Ray has the burden of demonstrating how he was harmed by his counsel's deficient performance, and he has failed to do so.

(b) *Failure to cross-examine witnesses*. Ray also generally points to his trial counsel's failure to adequately cross-examine witness, but again, he does not identify which witnesses should have been cross-examined or what such an examination

---

[29] (Citations and punctuation omitted.) *Smith v. State*, 298 Ga. 406, 412 (3) (a) (782 SE2d 269) (2016), quoting *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

[30] See *Dixon v. State*, 267 Ga. 136, 138 (2) (475 SE2d 633) (1996) (unsuccessful attempt to interview witness was not deficient performance).

would have produced. At the post-trial hearing, Ray's trial counsel testified that at the joint trial, his "turn" was third in line, so the State's witnesses had already been cross-examined by counsel for Brown (who was thorough) and Hammond (who filled-in gaps with follow-up questions). "[T]he scope of cross-examination is grounded in trial tactics and strategy[] and will rarely constitute ineffective assistance of counsel."[31] Based on the record before us, Ray has failed to meet his burden of showing deficient performance on this ground.[32]

(c) *Failure to sever*. Ray argues that his trial counsel was ineffective by abandoning his motion to sever. In light of our ruling in Division 2, this argument fails because "the failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel."[33]

*Case No. A16A1126*

4. Randell contends that the evidence was insufficient to support the guilty verdict, conclusorily arguing that "the evidence presented was contrary to a

---

[31] (Citation and punctuation omitted.) *Cooper v. State*, 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007).

[32] See id.

[33] *Hampton v. State*, 295 Ga. 665, 670 (763 SE2d 467) (2014).

18

conviction . . . and [Randell] should have been acquitted on all counts." This is belied by testimony that Randell participated in the planning of the robbery, rode in the car to the robbery, entered the restaurant with the other robbers, fled the scene with the other robbers, threw a stolen cell phone out of the car window to avoid tracing, and divided the spoils with the other robbers. Contrary to Randell's argument, "[o]n criminal appeal, appellant is no longer presumed innocent[,] and all of the evidence is to be viewed in the light most favorable to the jury verdict. This Court does not reconsider evidence or attempt to confirm the accuracy of testimony. Assessing a witness's credibility is the responsibility of the factfinder, not this Court."[34] Viewed properly, the evidence as a whole was sufficient to support the jury's guilty verdict as to Randell.

Randell also makes the same arguments as Ray as to certain offenses, and for the reasons stated in Division 1, those arguments fail.

5. Randell next argues that he received ineffective assistance of counsel. His burden on appeal is the same as stated in Division 3.

---

[34] (Citations omitted) *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014).

(a) *Failure to object to leading questions.* Randell argues that his trial counsel performed deficiently by failing to object to multiple leading questions by the State. At the motion for new trial hearing, Randell's trial counsel testified that it is his practice to object to some leading questions but not others, as he did in this case, depending on the context and whether it helps his case: "It's a judgment call." "As a general rule, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. An attorney's decision to forego objecting to hearsay or to leading questions used to establish routine points constitutes reasonable trial strategy."[35] Based on the record before us, Randell has failed to meet his burden under *Strickland* on this ground.

(b) *Failure to request discovery or interview witnesses.* Randell challenges his trial counsel's decision not to opt-in to discovery and his failure to interview any witnesses. This is belied by the transcript of the post-trial hearing, which contains testimony by Randell's counsel explaining that as part of his pre-trial investigation he was provided with the State's entire file and information on any deals they made with the State. Further, Randell's trial counsel testified that he did interview multiple

---

[35] (Citation and punctuation omitted.) *Williams v. State*, 282 Ga. 561, 564 (5) (a) (651 SE2d 674) (2007).

police witnesses during his investigation and that he spoke to the attorneys of the other defendants. Based on this record, Randell has not demonstrated deficient performance.[36]

(c) *Failure to sever.* Like Ray, Randell asserts that his counsel was ineffective by failing to move to sever his trial from that of his co-defendants. Nevertheless, his trial counsel explained that this decision was a strategic one hinging on a defense strategy – that cell phone records would exonerate his client – that ultimately failed to come to fruition. Further, as we explained in Division 2, trying the co-defendants jointly, despite a pending motion to sever filed by Ray, was within the trial court's discretion, so Randell cannot demonstrate that he was harmed on this basis.

(d) *Failure to request jury instruction.* Last, Randell argues that his trial counsel performed deficiently by failing to request the following jury charge: "Though you may consider all of the evidence as a whole, conviction of one defendant does not necessarily require conviction of another (or all). You, the jury, must determine the guilt or innocence of each defendant separately." The transcript

---

[36] See *Thompson v. State*, 203 Ga. App. 339 (2) (416 SE2d 755) (1992) (relying on informal process to obtain discovery materials from State was not ineffective assistance of counsel).

21

reveals that the trial court gave this instruction nearly verbatim. Accordingly, this argument fails.

6. Randell also challenges the trial court's failure to sever the trial. For the reasons stated in Division 2, this enumeration is without merit.

7. Finally, Randell argues that the trial court erroneously allowed the State to ask leading questions.

> Leading questions generally are allowed only on cross-examination. However, the trial court has the discretion to allow leading questions on direct examination, where, for example, the witness is nervous, or ignorant, or hostile. It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal.[37]

Here, certain leading questions were not challenged by counsel, so the trial "court's discretion was not even invoked,"[38] and as ruled in Division 5 (a), those questions do not support an ineffective assistance of counsel claim. As to other questions that were challenged, the trial court sustained some of the objections made by defense counsel, and Randell points to no specific objection that was erroneously

---

[37] (Citations omitted.) *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993).

[38] Id. at 265-266 (10).

22

overruled. We note that two of the three witnesses at issue were testifying with an interpreter, and "allowing leading questions where there is a language barrier" is not an abuse of discretion.[39] Based on Randell's lack of specific objections at trial, and his trial counsel's responses with respect to his ineffective assistance of counsel claim, we discern no reversible error.

*Case No. A16A1178*

8. Brown, the restaurant employee who was also convicted of participating in the robbery, urges that her sentence was unconstitutional as applied and on its face. She was found guilty of 43 counts based on the robbery, including multiple counts of armed robbery, kidnapping, false imprisonment, possession of a firearm during the commission of a felony, aggravated assault, pointing a pistol at another, and theft by taking. She was sentenced to two consecutive life sentences with the possibility of parole, with the remainder of her confinement concurrent to the life sentences.[40]

---

[39] *Dumas v. State*, 283 Ga. App. 279, 282 (3) (641 SE2d 271) (2007).

[40] For the reasons discussed below, we pretermit whether Brown made a timely objection to her sentence or whether her trial counsel was ineffective for not doing so.

23

(a) *Apprendi challenge*. Specifically, Brown challenges the two life sentences she received for armed robbery under OCGA § 16-8-41 (b), which provides that "[a] person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years." She asserts that this scheme is unconstitutional under the precedent established by *Apprendi*, which stands for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt."[41] Because the sentence at issue was within the statutory maximum and did not extend Brown's punnishment beyond the prescribed range supported by the jury's verdict, "*Apprendi* simply does not apply to this sentencing scheme."[42]

(b) *Vagueness challenge*. Brown also argues that her sentence was improper based on the vagueness of OCGA § 16-8-41 (b) as to when a life sentence might

---

[41] (Emphasis supplied.) *Apprendi*, 530 U.S. at 474 (II), 490 (IV) (specifically addressing "whether the 12-year sentence imposed . . . was permissible, given that it was above the 10-year maximum for the offense charged in that count").

[42] *Babbage v. State*, 296 Ga. 364, 368 (2) (b) (768 SE2d 461) (2015). See also *Burke v. State*, 274 Ga. App. 402, 404 (1) (618 SE2d 36) (2005).

24

apply versus a ten-to-twenty year sentence. But this Court has explained that the sentencing structure is not unconstitutionally vague:

> Although the statute allows the sentencing judge broad discretion, it does not provide two different maximum sentences and is not unconstitutionally vague. The courts of this state have consistently held that the maximum penalty upon conviction for armed robbery is life imprisonment. As an alternative to imposing this maximum sentence, under OCGA § 16-8-41 (b), a court also has the discretion to impose a determinate sentence of any period of time between five and twenty years.[43]

Therefore, Brown's arguments based on the vagueness of OCGA § 16-8-41 (b) are without merit.

(c) *Eighth Amendment challenge*. Brown argues that her sentence violated the U. S. and Georgia Constitutions' prohibitions against cruel and unusual punishment. As stated above, Brown's sentence was within the range prescribed by the statute.

> [A] presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment. Such presumption remains until a defendant sets forth a

---

[43] (Punctuation omitted.) *Hudson v. State*, 334 Ga. App. 166, 168 (2) (778 SE2d 406) (2015), quoting *Corey v. State*, 216 Ga. App. 180, 180-181 (454 SE2d 154) (1995).

factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience.[44]

[I]n order to determine if a sentence is grossly disproportionate, a court must first examine the "gravity of the offense compared to the harshness of the penalty" and determine whether a threshold inference of gross disproportionality is raised. In making this determination, courts must bear in mind the primacy of the legislature in setting punishment and seek to determine whether the sentence furthers a "legitimate penological goal" considering the offense and the offender in question. If a sentence does not further a legitimate penological goal, it does not "reflect a rational legislative judgment, entitled to deference," and a threshold showing of disproportionality has been made. If this threshold analysis reveals an inference of gross disproportionality, a court must proceed to the second step and determine whether the initial judgment of disproportionality is confirmed by a comparison of the defendant's sentence to sentences imposed for other crimes within the jurisdiction and for the same crime in other jurisdictions.[45]

Here, the trial court explained at the sentencing hearing that the crime "would not have happened without" Brown's participation. Brown worked at the restaurant

---

[44] (Punctuation omitted.) *McKenzie v. State*, 302 Ga. App. 538, 541 (2) (691 SE2d 352) (2010).

[45] (Footnotes omitted.) *Humphrey v. Wilson*, 282 Ga. 520, 525 (3) (a) (652 SE2d 501) (2007).

and had noticed the potential for a large amount of cash to be handled at the end of the day and that the security cameras did not work. More importantly, Brown left the front door of the restaurant unlocked after hours, contrary to the restaurant's policy of locking the door during closing. The trial court also noted the effect on each of the multiple victims in the restaurant who had guns "to their heads and backs" not knowing "whether they would live or die," as well as the ripple effect on the community such that "you can't go into a restaurant without wondering . . . what's going to happen." The court also considered the punitive effect of a harsh sentence, as well as ensuring that "the rest of us will be safe from you." Last, the court noted that Brown's conduct was "perhaps even worse" than her co-defendants because the victims were her co-workers and friends, and Brown was the one who deliberately allowed three masked gunmen to enter and rob the victims at gunpoint.

In light of all of these factors, as well as the statutory sentencing scheme and Brown's eventual eligibility for parole, Brown has not overcome the presumption that her sentence did not violate the Eighth Amendment's guarantee against cruel and unusual punishment.[46]

---

[46] See *Windhom v. State*, 326 Ga. App. 212, 216 (5) (756 SE2d 296) (2014).

9. Brown also argues that the State failed to prove her accomplice liability under *Rosemond*[47] for the offenses involving firearms. That case "held that, under the federal aiding and abetting statute,[48] a person may be convicted of aiding and abetting the federal crime of using or carrying a firearm in connection with a drug trafficking crime,[49] only if [s]he had advance knowledge that a co-defendant would use or carry a firearm."[50] Pretermitting whether the evidence showed Brown's knowledge that her co-defendants would be armed, "[t]hat case arose under federal law [addressing a different criminal statute,] and thus does not control here." Thus, "although [Brown] argues that pursuant to *Rosemond* . . . a defendant must know in advance that [her] companion is armed because the defendant must intend to commit each element of the crime rather than a single component of it, our Supreme Court already has

---

[47] __ U. S. at __ (134 SCt 1240; 188 LE2d 248) (2014).

[48] See 18 USC § 2.

[49] See 18 USC § 924 (c).

[50] *Hicks v. State*, 295 Ga. 268, 273, n. 3 (1) (759 SE2d 509) (2014).

28

distinguished and declined to follow *Rosemond*."[51] Accordingly, this enumeration is without merit.

10. Finally, Brown argues that the evidence was insufficient to support the verdict as to the kidnapping, false imprisonment, and armed robbery counts addressed in Division 1. For the reasons discussed in that division, this enumeration fails.

*Judgments affirmed. Andrews, P. J. and Ray, J., concur.*

---

[51] *Boccia v. State*, 335 Ga. App. 687, 698-699 (5) (782 SE2d 792) (2016), citing *Williams v. State*, 276 Ga. 384, 386 (4) (578 SE2d 858) (2003) (prosecution is not required to prove defendant knew that co-defendant intended to use a gun; the only proof required was that defendant was part of a conspiracy to rob and co-defendant's "use of the weapon by the accomplice was naturally and necessarily done in furtherance of that crime").