## S10A1999. CARTER v. THE STATE.

(709 SE2d 223)

MELTON, Justice.

Following a jury trial, Jerrod Carter was found guilty of malice murder, armed robbery, and aggravated assault in connection with the shooting death of Lawrence Chambliss.[1] On appeal Carter contends, among other things, that the evidence presented at trial was insufficient to support his convictions; that the trial court erred with respect to various evidentiary matters; and that the trial court erred in its charge to the jury. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the record reveals that, on March 26, 2008, two men wearing bandanas to cover a portion of their faces were standing near a silver Honda Accord outside of the home of LaShonda Williams. The two men were firing an assault-type rifle into the air and demanding money. One of the shots entered Williams' home, and Williams then went to the front door of the house, where she could see the two men, and recognized Erik Haynes as one of the would-be robbers. After firing several shots into the air, but hitting no one and receiving no money, Haynes and his compatriot got into the silver Honda Accord with a third man who was driving. Williams identified the driver of the silver Honda as Marcus Newsome. The men drove away in the Honda, and, minutes later, they arrived at another home, where Haynes and his compatriot went inside, fired shots at the people in the home, and took money. As the victim, Chambliss, attempted to

---

[1] On August 19, 2008, Carter was indicted for malice murder, four counts of armed robbery, and six counts of aggravated assault. Following a March 2-6, 2009 jury trial, on March 6, 2009, Carter was found guilty on all charges. On March 9, 2009, the trial court sentenced Carter to life imprisonment for malice murder; life imprisonment for each count of armed robbery; and twenty years imprisonment for each count of aggravated assault, all to run concurrently. Carter filed a motion for new trial on March 16, 2009, which he amended with new counsel on November 17, 2009. The motion was denied on May 13, 2010. Carter's timely appeal was docketed in this Court for the September 2010 term, and his case was orally argued on November 8, 2010.

run out of the house, he was shot twice in the back. Chambliss died from his wounds. Although Carter denied to police that he had any contact with the silver Honda that was connected to the robbery, his fingerprints were found on the outside of the car. Furthermore, an eyewitness' physical description of the second gunman from the robbery matched Carter.

The evidence outlined above was sufficient to enable a rational trier of fact to find Carter guilty of all the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to a crime); OCGA § 24-4-6 (conviction based on circumstantial evidence authorized where proved facts are consistent with the hypothesis of guilt and exclude every other reasonable hypothesis save that of the guilt of the accused).

2. Carter contends for the first time on appeal that his trial counsel was ineffective. However, because Carter did not raise any ineffectiveness claims in his motion for new trial, despite the fact that he had new appellate counsel before filing his amended motion for new trial, he has waived these contentions on appeal. *Thompson v. State*, 257 Ga. 386, 388 (2) (359 SE2d 664) (1987) ("Any ineffective counsel challenge will be deemed waived if the new attorney files an amended motion for new trial and does not raise the issue before the trial court so that the challenge can be heard at the earliest practicable moment, i.e., during the hearing on the amended motion").

3. Carter claims that the trial court erred in denying his motions for a mistrial after (a) a police detective testified that he obtained an arrest warrant for Carter after speaking with Erik Haynes, and (b) a juror started crying as the victim's widow and two other family members of the victim allegedly ran out of the courtroom crying during the State's closing arguments.

(a) With respect to the detective's testimony, Carter claims that, because Haynes did not testify, the officer's testimony about obtaining a warrant after speaking with Haynes deprived Carter of his opportunity to cross-examine Haynes about the nature of any statements that he may have made to the detective. See *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). As an initial matter, a review of the transcript reveals that the officer did not testify regarding any actual statements made by Haynes. In any event, even if the officer had testified regarding statements made by Haynes, "[Carter] failed to object to the admission of [such] testimony as violative of his right of confrontation and as error under *Crawford*; therefore, this alleged *Crawford* violation is not properly considered on appeal." (Citation omitted.) *Treadwell v. State*, 285 Ga. 736, 739 (1) (a) (684 SE2d 244) (2009).

(b) With regard to the victim's family members allegedly leaving the courtroom crying and a juror crying, Carter's claim is belied by the record. Contrary to Carter's description of the scene during closing arguments, the trial court stated: "Well, first of all, the Court does not adopt [Carter's] attorney's recitation of what occurred. The Court watched very carefully the jury and the widow. [The widow] did not go out crying, and I deny [the] motion [for a mistrial]." The record does not support Carter's claim that the trial court abused its discretion in denying his motion for a mistrial. See, e.g., *Forney v. State*, 255 Ga. 316, 318 (3) (338 SE2d 252) (1986) ("Demonstrations and outbursts which occur during the course of a trial are matters for the trial court's discretion," and trial court did not abuse its discretion in denying motion for mistrial after victim's wife cried openly during closing arguments and had to be escorted from courtroom) (citation omitted).

4. Carter argues that the trial court erred in giving the following charge to the jury:

> [Y]ou have received information that the non-testifying co-defendant was interviewed by law enforcement and, as a result, law enforcement took certain actions. Any alleged statement made by such co-defendant would be hearsay. Hearsay evidence is not probative evidence in determining the guilt or innocence of the accused and has no value, weight, or force in establishing any fact used to decide the guilt or innocence of the accused. You should not speculate about what may or may not have been said in such state-ment, if any, and shall not use such in reaching your verdict. The statement of a non-testifying co-defendant is not ad-missible as evidence against other co-defendants, and the contents of said statement, if any, may not be revealed to the jury and you may not consider such in determining the guilt or innocence of these defendants.

Carter contends that this charge improperly highlighted the fact that police interviewed Haynes and obtained an arrest warrant for Carter based on statements that Haynes may have made in such an interview. However, a plain reading of the charge given shows that the trial court was clearly instructing the jury that it could *not* consider any alleged statements by Haynes that he may or may not have made to police, not that the jury should focus on any such statements. This enumeration lacks merit. See, e.g., *Wehunt v. State*, 168 Ga. App. 353, 357 (7) (309 SE2d 143) (1983) ("[C]onsidering the charge as a whole, it is most unlikely the jury was misled or any harm done to the defendant") (citation omitted).

5. Carter asserts that the trial court erred in denying his motion to suppress the admission at trial of his custodial statement to police. The trial court admitted Carter's statement after conducting a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. *Fowler v. State*, 246 Ga. 256, 258 (3) (271 SE2d 168) (1980). The issue presents a mixed question of fact and law. [Cit.] On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.

(Citation and punctuation omitted.) *Vergara v. State*, 283 Ga. 175, 176-177 (657 SE2d 863) (2008).

The record here reveals that the two officers who interviewed Carter testified at the *Jackson-Denno* hearing, and their testimony revealed that Carter was read, and that he understood, his *Miranda* rights; that Carter agreed to talk with the police; that Carter was not coerced or threatened in any way; that Carter was not offered any hope of benefit in order to convince him to talk to the police; and that the questioning of Carter ceased as soon as he asked for a lawyer. "Consequently, the trial court did not err in refusing to suppress [Carter's] . . . custodial statement[ ]." *Vergara*, supra, 283 Ga. at 181 (1).

6. Carter argues that the trial court erred in failing to give a curative instruction after a State's witness testified that he had been the victim of an assault on the weekend before coming to trial to give his testimony. However, because Carter did not request that the trial court give a curative instruction in relation to this testimony, he has waived review of this issue on appeal. See *Caldwell v. State*, 263 Ga. 560 (18) (436 SE2d 488) (1993); *Harden v. State*, 272 Ga. App. 559 (1) (612 SE2d 877) (2005).

7. Carter urges that the trial court erred by only allowing into evidence the certified convictions of State's witness Williams, and not allowing the indictments associated with those convictions to be admitted into evidence as well. However, Carter is incorrect in his assertion that the indictments should have been admitted into evidence along with Williams' convictions, as it is only

> [e]vidence that a witness has been *convicted* of a crime [that] shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law

under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness.

(Emphasis supplied.) OCGA § 24-9-84.1 (a) (1). See also OCGA § 24-9-84.1 (a) (3) ("Evidence that any witness . . . has been *convicted* of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense") (emphasis supplied). An indictment represents only accusations against a defendant, and is not in itself a conviction. This enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2011 —
RECONSIDERATION DENIED APRIL 12, 2011.

*Bush, Crowley & Leverett, Joseph S. Bloodworth*, for appellant.
*Howard Z. Simms, District Attorney, Dorothy V. Hull, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Amy Hawkins Morelli, Assistant Attorney General*, for appellee.