305 Ga. 889
FINAL COPY

S19A0276. WILLIAMSON v. THE STATE.

PETERSON, Justice.

Stevie Dustin Williamson appeals his convictions for malice murder, burglary, and other charges stemming from the July 2006 shooting death of George Rutten at Rutten's Seminole County home.[1] Williamson challenges the sufficiency of the evidence as to

---

[1] On October 17, 2006, a grand jury indicted Williamson for malice murder, three counts of felony murder (predicated on aggravated assault, armed robbery, and burglary), aggravated assault, armed robbery, burglary, and possession of a firearm during the commission of a crime. At an April 2007 trial, a jury found Williamson guilty of all counts. The trial court sentenced Williamson to life for malice murder, a consecutive life sentence for armed robbery, 20 years concurrent for burglary, and five years consecutive for the firearm count. The remaining counts were merged or vacated by operation of law. Williamson through trial counsel filed a motion for new trial on May 4, 2007. A succession of new attorneys filed entries of appearance in June 2007, May 2008, and April 2014. The third post-trial counsel, an attorney with the appellate division of the Georgia Public Defender Council, filed an amended motion for new trial on November 4, 2014. The Public Defender Council substituted counsel multiple times thereafter, with the lawyer who currently represents Williamson before this Court filing an appearance in January 2018. The trial court (not the judge who presided over the trial) denied the motion for new trial on March 22, 2018. Williamson filed a timely notice of appeal, and the case was docketed in this Court for the term beginning in December 2018. We heard oral argument in the case on February 5, 2019.

burglary and a felony murder count predicated on burglary. Williamson also argues that the trial court erred when it did not grant his motion to suppress certain custodial statements and evidence flowing therefrom and erred in charging the jury that (1) the jury could consider any prior consistent statements by witnesses as "substantive evidence" and (2) it should consider any statement made by the defendant "with great care and caution." Williamson also has filed a motion with this Court asking that the case be remanded to the trial court so that he can raise possible claims of ineffective assistance of trial counsel. We conclude that the evidence was sufficient to find that Williamson committed the crimes of which he was convicted, the trial court did not err in finding that his custodial statements were admissible, and none of the cited jury instructions are a basis to reverse Williamson's convictions. We also conclude that Williamson is barred from raising in this direct appeal any claims of ineffective assistance of trial counsel because he did not raise them at the earliest possible moment. We therefore deny the motion to remand and affirm Williamson's convictions.

According to the evidence viewed in the light most favorable to the verdicts, Williamson had performed some odd jobs for Rutten, but was then fired. On July 26, 2006, Josh Heisler, who also did work for Rutten, arrived at Rutten's residence and found Rutten lying on the floor of his bedroom, unresponsive. Responding officers and emergency medical personnel found Rutten lying on the bedroom floor near a door that connected the bedroom to the garage that he used as a workshop. Rutten's body lay at one end of a trail of blood that led to the garage. Rutten had been shot three times — in the head, chest, and shoulder — and died of his wounds.

Around the time of the victim's death, Williamson told a girlfriend, Lisa Finley, in a phone conversation that "he shot an older guy in the head over some marijuana in his walls." On August 25, 2006, Williamson told a GBI agent that he had ridden with Heisler to Rutten's house and waited in the truck while Heisler went to speak to Rutten. Williamson then heard arguing and gunshots,

and Heisler returned and said that he thought he had killed Rutten.[2]

In interviews the next day, Williamson changed his story, telling agents that he walked to Rutten's home, where he found Rutten sitting in his garage. Williamson said that he tried to discuss with Rutten returning to work, but the two men argued when Rutten wanted to talk about something else. Rutten grabbed Williamson and the two tussled, Williamson recounted, and Rutten reached for a rifle. Rutten was shot when the gun discharged multiple times during the fight, falling to the ground inside his bedroom near the door to the garage, Williamson recounted, consistent with how authorities found Rutten's body. Williamson told the officers that he then entered Rutten's bedroom, where Rutten was lying on the floor, and took Rutten's wallet before leaving. Williamson said that he threw the wallet, as well as Rutten's gun, into a wooded area nearby.

---

[2] Williamson repeated this version of events in his trial testimony, but also testified that he was high on methamphetamine the night Rutten was killed and could not remember everything that happened that night.

Based on Williamson's direction, officers recovered Rutten's gun and wallet. The recovered firearm was a .22-caliber bolt-action rifle that had to be reloaded manually after each shot was fired. A firearms expert determined that the recovered rifle (1) fired bullets recovered from the victim's body, (2) fired shell casings recovered from the victim's bedroom, and (3) chambered unfired bullets recovered from the victim's garage (which included at least one found within a few feet of the garage's entrance).

1. Williamson argues that the evidence was insufficient to sustain a guilty verdict on the burglary count, as well as the felony murder count predicated on burglary, because the State failed to prove that he did not have authority to enter Rutten's home. We disagree.[3]

We review this claim for whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson

_____

[3] Because the felony murder counts were vacated by operation of law upon Williamson's conviction for malice murder, see Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), he was not convicted of felony murder and his argument as to the felony murder count predicated on burglary is moot. See Anderson v. State, 299 Ga. 193, 196 (1) n.4 (787 SE2d 202) (2016).

v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). "[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted).

At the time Williamson was alleged to have committed the offenses charged, the burglary statute provided:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof. . . .

OCGA § 16-7-1 (a) (1980).[4] Williamson argues that the evidence did not show that he entered Rutten's home without authority and thus was insufficient to support his burglary conviction. Entry without authority may be proven by circumstantial evidence alone. See Bryant v. State, 282 Ga. 631, 634 (2) (651 SE2d 718) (2007); Jones v. State, 258 Ga. 25, 27 (1) (365 SE2d 263) (1988). Although circumstantial evidence must exclude every reasonable hypothesis save the defendant's guilt in order to support a conviction by itself, this Court will not disturb a jury's finding in that regard unless it is unsupportable as a matter of law. See Akhimie v. State, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015).

Williamson argues that the State failed to prove that he lacked authority to enter Rutten's bedroom, if indeed he entered it at all.[5]

---

[4] Williamson correctly notes that evidence that he merely remained in Rutten's home without authority would not be enough to convict him, since that was a theory of burglary that was not charged in the indictment and on which the jury was not instructed. See Bell v. State, 287 Ga. 670, 673 (1) (c) (697 SE2d 793) (2010).

[5] Whether Rutten's "garage" could have been part of his "dwelling" is unclear from this record (the burglary statute in effect at the time of the crime did not explicitly include "curtilage" as part of a dwelling, as previous versions

Williamson points out that he and Rutten knew each other, and that notwithstanding that Rutten had fired him, there was no evidence of actual ill will between them. But that ignores that — by his own confession to law enforcement — Williamson acknowledged entering the bedroom after Rutten was shot. And given that the bolt-action rifle was required to be reloaded after each shot, his claim that the gun simply discharged during a scuffle — multiple times — could easily be disbelieved by the jury in favor of a conclusion that Williamson deliberately shot Rutten. And, of course, once Williamson shot Rutten, any notion that he was then permitted to enter Rutten's bedroom is simply nonsense. The evidence was sufficient to allow the jury to conclude that Williamson entered

of the statute had, see, e.g., 1910 Penal Code § 146; 1895 Penal Code § 149). No party argues now or argued to the jury that the garage was part of the dwelling, and it was plainly not an ordinary enclosed garage of the sort that would usually qualify as part of a dwelling; although the record contains little detail on this point, it appears to have been open on at least one side, and various witnesses referred to it as a shed, a workshop, or simply "outside." Accordingly, we do not analyze Williamson's entry into the "garage" as the relevant entry for the burglary.

Rutten's bedroom (and therefore his "dwelling") without authority to steal Rutten's wallet, and thus to convict Williamson of burglary.

Although Williamson does not challenge the sufficiency of the evidence as to the other crimes of which he was convicted, we have independently reviewed the record per our practice in murder cases. We conclude that the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williamson was guilty of the crimes of which he was convicted. See Jackson, 443 U. S. at 319.

2. Williamson next argues that the trial court erred when it did not grant his motion to suppress his statements. Williamson argues that the August 26 statement in which he first made inculpatory remarks should have been suppressed because interrogating officers made comments at odds with the warnings they gave pursuant to Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). We disagree.

Williamson's claim focuses on remarks agents made to him during the August 26 interview in which he first changed his story

from one in which he was waiting in the car when Rutten was shot, to a version in which Rutten was shot accidentally while Williamson and Rutten fought.[6] At the outset of the interview, agents read Williamson his rights pursuant to <u>Miranda</u> and obtained Williamson's written waiver. As the agents pressed Williamson to confess, one of the agents told him that the evidence against him "look[ed] horrible," asked him, "what have you got to lose?" and urged him to consider the merits of confessing:

> I mean, the facts, you need to say. I mean, you need to honestly look at how is it going to hurt you, you know what I'm saying? You're here. You're here at the jail for a reason. You know? And it's like we've been saying, this is a decision.

Williamson also notes that, prior to his inculpatory statements, another investigator told him that he was "already charged" and the investigators were merely seeking "the truth and all the facts of it."

---

[6] Williamson also argues that the physical evidence gathered after he made that statement, as well as his subsequent August 26 statement, should have been suppressed as "fruit of the poisonous tree" under <u>Wong Sun v. United States</u>, 371 U. S. 471, 484-488 (83 SCt 407, 9 LE2d 441) (1963). Given our conclusion that the trial court did not clearly err in finding Williamson's initial inculpatory statements admissible, we need not consider this argument.

After a hearing, the trial court ruled that Williamson's statements were admissible, finding "from the preponderance of the evidence that Defendant was advised of each of his <u>Miranda</u> rights, that he understood each <u>Miranda</u> right, that he voluntarily waived each <u>Miranda</u> right and that he thereafter gave statements freely and voluntarily without any hope of benefit or fear of injury" at each of the interviews in question. An agent testified at trial as to Williamson's initial inculpatory statements on August 26, and a recording of the later August 26 interview where he made similar statements was played for the jury.

Williamson argues that his <u>Miranda</u> waiver was invalid because he did not understand the rights that he purportedly waived. <u>Miranda</u> provides that if a custodial interrogation continues without the presence of an attorney after required warnings are given, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U. S. at 475. "Only if the totality of the circumstances

surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived." <u>Moran v. Burbine</u>, 475 U. S. 412, 421 (106 SCt 1135, 89 LE2d 410) (1986) (citation and punctuation omitted). A statement by an interrogating agent that contradicts the <u>Miranda</u> warnings is a circumstance that can indicate a suspect did not knowingly and intelligently waive his rights. See, e.g., <u>Hart v. Attorney Gen. of the State of Fla.</u>, 323 F3d 884, 894-895 (11th Cir. 2003). A trial court's decision as to whether a defendant made a knowing and intelligent waiver of his <u>Miranda</u> rights will not be disturbed on appeal unless clearly erroneous. See <u>Findley v. State</u>, 251 Ga. 222, 226 (2) (304 SE2d 898) (1983).

Williamson suggests that statements by the interrogating agents contradicted the <u>Miranda</u> warning that anything he said could be used against him. But at no point did either of Williamson's interrogators tell him explicitly that continuing to speak to them would carry no negative consequences; instead, they merely raised questions, asking him to consider "what [he had] to lose" and "how

is it going to hurt[.]" And when an agent asked Williamson, "what have you got to lose," Williamson immediately responded, "a whole lot." Williamson subsequently indicated to the officers that a confession would put him in a "six-by-six cell," further indicating that he understood that inculpatory remarks on his part could have serious negative consequences. This case is not like those Williamson cites in which appellate courts have found error in admitting statements made after agents made affirmative misrepresentations that contradicted the Miranda warnings they already had given. See United States v. Lall, 607 F3d 1277, 1283-1284 (11th Cir. 2010) (detective told defendant that he would not pursue any charges against him); Hart, 323 F3d at 894-895 (detective told defendant that "honesty wouldn't hurt him" and that the disadvantage of having a lawyer present was that a lawyer would tell him not to answer incriminating questions) (punctuation omitted); United States v. Beale, 921 F2d 1412, 1435 (11th Cir. 1991) (agents told defendant that signing the Miranda waiver form would not hurt him); Foster v. State, 258 Ga. 736, 742 (8) (b) (374

SE2d 188) (1988) (appellant was told that reiterating inculpatory statements on videotape was not going to hurt "a thing" and would be "as much for [his] benefit as" that of police) (punctuation omitted). The trial court's decision to admit Williamson's statements was not clearly erroneous.[7]

3. Williamson also points to two aspects of the trial court's jury instructions as warranting a new trial.[8] We find no basis for reversal in the cited instructions.

(a) Williamson argues that the trial court erred when it charged the jury that if it found that a witness had made a material

---

[7] To the extent that Williamson also argues that his statements were inadmissible as involuntary under the Due Process Clause of the Fourteenth Amendment, the trial court also did not err in finding that they were voluntarily made. Due process voluntariness claims also are evaluated by considering the totality of the circumstances. See Welbon v. State, 301 Ga. 106, 109 (2) (799 SE2d 793) (2017). And Williamson cites no circumstances other than the law enforcement comments that he contends undermined the Miranda warnings in arguing that his statements should have been suppressed.

[8] Williamson correctly notes that counsel's reservation of his right to make objections to the instructions was sufficient under prevailing law at the time of trial, which was held a few months before the July 1, 2007 effective date of OCGA § 17-8-58. See Flournoy v. State, 294 Ga. 741, 743 (2) n.2 (755 SE2d 777) (2014); State v. Kelly, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011).

prior consistent statement, it could "consider the other statement as substantive evidence." Pointing to an agent's testimony regarding prior consistent statements by Heisler and Finley, Williamson argues that this charge suggested that these prior statements were of greater importance than other evidence, or, worse, that other evidence was not substantive evidence. It is true that we said, after Williamson's trial, that "an instruction on prior consistent statements should no longer be given except where the circumstances of an unusual case suggest that the jury may have the mistaken impression that it cannot consider a prior consistent statement as substantive evidence." Stephens v. State, 289 Ga. 758, 759 (1) (a) (716 SE2d 154) (2011) (noting that a jury question about prior consistent statements or an improper argument that such statements are not valid evidence may constitute grounds for instruction).

But we also have said that giving such an instruction will usually not be reversible error. Stephens, 289 Ga. at 760 (1) (b); see also Brown v. State, 297 Ga. 685, 691 (4) (777 SE2d 466) (2015);

Johnson v. State, 289 Ga. 106, 110-111 (5) (709 SE2d 768) (2011). The instruction is not reversible error here. "[P]rior consistent statements *are* substantive evidence that also tends to bolster the witness's trial testimony by disproving charges of recent fabrication or improper influence or motive" and the instruction "does not explicitly direct the jury to place any additional weight on prior consistent statements beyond that which the law already gives them[.]" Stephens, 289 Ga. at 760 (1) (b) (emphasis in original). And "jury instructions must be read and considered as a whole in determining whether the charge contained error." Campbell v. State, 292 Ga. 766, 769 (3) (740 SE2d 115) (2013) (citation and punctuation omitted). In this case, the jury was charged that "evidence" includes all of the testimony of the witnesses and that the jury was to determine what testimony to believe and what weight to give each witness's testimony. The jury was instructed about how to determine credibility and how to consider conflicts in the evidence. "Here the court's instructions, taken as a whole, would not mislead a jury of average intelligence." Johnson, 289 Ga. at 110-111 (5)

(citation and punctuation omitted). We find no reversible error in this instruction.

(b) Williamson also argues that the trial court erred by ending its pattern charge concerning statements by the defendant with the words, "You should consider with great care and caution the evidence of any statement made by the Defendant." He argues that this instruction had the effect of telling the jury that it should be careful when considering the truth of all of his statements, including his exculpatory statements and his testimony at trial. His argument fails.

In cases decided after Williamson's trial, the Court of Appeals has cautioned against giving the "great care and caution" charge when the defendant has made exculpatory statements, and recommended that the pattern charge utilizing this language be modified. See <u>Pincherli v. State</u>, 295 Ga. App. 408, 414-415 (3) (b) & n.25 (671 SE2d 891) (2008); <u>McKenzie v. State</u>, 293 Ga. App. 350,

352-353 (3) (667 SE2d 142) (2008).[9] But looking at the jury instructions as a whole, a reasonable jury would not have understood the disputed instruction to mean that they should be more skeptical of Williamson's statements and testimony than those of other witnesses. Read in context, the admonition to be careful in considering evidence of a statement made by the defendant would be understood to mean that it should consider a custodial statement of the defendant only if the State proves that (1) the defendant was first warned of his constitutional rights and clearly understood and waived those rights; and (2) the defendant's statement was voluntarily given. It was after describing those requirements that the trial court instructed the jury here:

> If you fail to find any one of the conditions I've just described, you must disregard the statement entirely and give it no consideration in reaching your verdict except for the purposes of impeachment. You should consider with great care and caution the evidence of any statement made by the Defendant.

---

[9] This language was subsequently omitted from the pattern charge. See Campbell, 292 Ga. at 769 (3).

Moreover, the trial court instructed the jury that if the State had met its burden for admissibility of a defendant's custodial statements, the jury was to "apply the general rules for testing the believability of witnesses and decide what weight, if any, [to] give to all or any part of such evidence." Thus, the trial court's giving of the "great care and caution" instruction is not a basis for reversing Williamson's conviction, either.

4. Having concluded that none of the enumerations of error raised by Williamson on appeal are a basis for reversal, we turn to a motion he filed along with his appellate brief. In his motion, Williamson seeks a remand to develop evidence that his trial counsel was ineffective. We conclude that any such claims of trial counsel ineffectiveness are procedurally barred and deny the motion.

As noted in the first footnote of this opinion, Williamson filed an initial motion for new trial through trial counsel in May 2007. One of the series of other lawyers assigned to represent Williamson on appeal in the years that ensued filed an amended motion in November 2014. This amended motion did not raise any claim that

trial counsel was ineffective. The lawyer who currently represents Williamson before this Court filed an appearance in January 2018 and asked the trial court to rule on the motion for new trial based on the existing filings. The trial court denied the motion for new trial on March 22, 2018.

In the motion to remand before us now, current counsel avers that it was only after the trial court denied the motion for new trial that counsel "realized that the file and record were incomplete." Counsel states that she "finally acquired the trial case file from the local public defender's office in early July 2018," and, upon review of the file, identified several potential ineffectiveness of trial counsel claims, specifically that counsel failed to: (1) present evidence of prior difficulties between Rutten and Heisler; (2) present evidence that Heisler threatened multiple witnesses during the investigation; (3) present phone records that would show that Williamson and Finley never spoke on the phone after the murder; and (4) object to multiple incidents of bolstering in an investigating officer's

testimony. Williamson seeks remand so he can present new evidence in a motion for new trial hearing.

The State argues that any claims that trial counsel was ineffective have been waived because they were not raised at the earliest opportunity. We agree. Any claim of ineffectiveness of counsel must be made at the earliest practicable moment. See Thompson v. State, 257 Ga. 386, 388 (2) (359 SE2d 664) (1987). "[B]ecause [Williamson] did not raise any ineffectiveness claims in his motion for new trial, despite the fact that he had new appellate counsel before filing his amended motion for new trial, he has waived these contentions on appeal." Carter v. State, 289 Ga. 51, 52 (2) (709 SE2d 223) (2011); compare Slade v. State, 267 Ga. 868, 870 (5) (485 SE2d 726) (1997) (remanding case to trial court for an evidentiary hearing on claim of ineffective assistance of trial counsel, where trial court did not appoint appellate counsel until

after trial counsel had filed the notice of appeal).[10] We deny Williamson's motion to remand.

Judgment affirmed. All the Justices concur.

Decided May 6, 2019 – Reconsideration denied June 3, 2019.

Murder. Seminole Superior Court. Before Judge Bishop.

Cara Clark, for appellant.

Ronald V. McNease, Jr., District Attorney, Ronald S. Smith, Timothy L. Eidson, Thomas S. Bishop, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.

---

[10] Williamson concedes that the motion fails unless we make an exception to existing case law based on a proffer of some specific evidence that could be presented in support of an ineffectiveness claim. We decline to make an exception.