306 Ga. 538
FINAL COPY

S19A0635.  MARTIN v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, Hajja Kenyatta Martin was convicted of felony murder, arson in the first degree, concealing the death of another, and eight firearms charges in connection with the shooting death of Ralph McGhee.[1] Martin appeals pro se, challenging the

---

[1] McGhee was killed on July 29, 2012. A DeKalb County grand jury returned an indictment on October 18, 2012, charging Martin with malice murder, felony murder (predicated on aggravated assault), aggravated assault, felony murder (predicated on possession of a firearm by a convicted felon), seven counts of possession of a firearm (one handgun, three rifles, and three shotguns) by a convicted felon (OCGA § 16-11-131 (b)), arson in the first degree, concealing the death of another, and possession of a firearm during the commission of a felony (OCGA § 16-11-106). Following an August 11-15, 2014 jury trial, Martin was found not guilty of malice murder and guilty on all remaining counts. On August 19, 2014, the trial court sentenced Martin to life imprisonment for felony murder (predicated on aggravated assault); twenty years' imprisonment for arson, to run concurrently; ten years' imprisonment for concealing the death of another, to run concurrently; five years' imprisonment for possession of a firearm during the commission of a felony, to run consecutively; five years' imprisonment for possession of a firearm (the handgun) by a convicted felon, to run consecutively; and five years' imprisonment for each of the six remaining counts of possession of a firearm by a convicted felon, to run concurrently. See Division 7, infra. The court did not enter sentences on the remaining counts, which were either vacated as a matter of law or merged for the purpose of sentencing. See *Atkinson v. State*,

sufficiency of the evidence and contending that the trial court erred in admitting evidence of a prior conviction, in allowing the prosecutor to argue that Martin's claim of self-defense was based on lies, and in instructing the jury. He also contends he received ineffective assistance of counsel. For the reasons set forth below, we affirm Martin's convictions for felony murder, arson, concealing the death of another, and possession of a firearm during the commission of a felony. We vacate in part and remand, however, for the correction of sentencing errors regarding his convictions for possession of a firearm by a convicted felon.

1. Martin contends that the evidence is insufficient to sustain his convictions. Specifically, he argues that the State failed to

---

301 Ga. 518, 520-521 (2) (801 SE2d 833) (2017). Martin filed a motion for new trial on September 15, 2014, which he amended on April 29, 2015, with the assistance of new post-conviction counsel. After an October 31, 2017 hearing, the court denied the motion for new trial on November 29, 2017, and counsel filed a timely notice of appeal. After Martin requested that appointed counsel be removed and that he be allowed to represent himself on appeal, the trial court conducted a hearing pursuant to *Faretta v. California*, 422 U. S. 806, 818-821 (III) (A) (95 SCt 2525, 45 LE2d 562) (1975), and, on November 14, 2018, granted his request to proceed pro se. Martin filed a timely notice of appeal, and his appeal was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

2

disprove his defense of justification, because he was the only eyewitness to the shooting and therefore his "plausible account of the events that occurred" — that he shot McGhee in self-defense after McGhee attacked him and tried to kill him — was undisputed.

When we consider the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdicts and inquire only whether any rational trier of fact might find beyond a reasonable doubt that the defendant is guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Dorsey v. State*, 303 Ga. 597, 600 (1) (814 SE2d 378) (2018). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Dorsey*, 303 Ga. at 600 (1) (citation and punctuation omitted).

As detailed below, Martin admitted at trial that he shot McGhee, secretly disposed of his body, and tried to destroy evidence of the shooting, but testified that he shot McGhee in self-defense. In

terms of evidence relied upon by the State to show that Martin did not shoot McGhee in self-defense, the record shows that the two men, who had been housemates for a few months, had a dispute about car repairs in the weeks before the shooting. McGhee's mother testified that, one evening in early July 2012, she was speaking to her son on the telephone when she overheard Martin angrily say, "Man, I will kill you before I give you $1,500," referring to the bill for the car repairs. On July 31, Martin borrowed a van from a family member, purchased new carpet, rented carpet installation equipment, and returned the van, smelling of deodorizer, to its owner. On August 1, two fishermen found McGhee's body floating in the Chattahoochee River in Cobb County. McGhee's fingertips had been burned, and his body was wrapped in bedclothes and a plastic shower curtain, secured with duct tape.

On August 2, after the body pulled from the Chattahoochee River had been identified as McGhee, police officers obtained a warrant to search his residence, where Martin also lived. While the officers were knocking on the front door to execute the search

4

warrant, Martin was going out the back door; he removed three shotguns and three rifles from the house and hid them in an overgrown area behind the house. Then Martin ran away and, one street over, asked a neighbor who was driving by for a ride. He told the neighbor that his "brother," as he always referred to McGhee, was supposed to go out of town but someone had killed him.

In searching the house, the officers found that the carpet had been ripped up and the sub-flooring painted. McGhee's bedroom had also been freshly painted, and there were rolls of new carpet lying nearby. The six long guns were found in the back yard. That night, Martin tried to set the house on fire, but succeeded only in burning the back door.

On August 4, a federal marshal arrested Martin and turned him over to Cobb County police officers. Martin waived his *Miranda*[2] rights and spoke to investigators.[3] He first claimed that armed intruders had killed McGhee. He changed his story and claimed that

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).
[3] A recording of Martin's custodial interview was played for the jury at trial.

he killed McGhee in self-defense, although he had no defensive wounds or other injuries when he was arrested a few days after the shooting. He admitted throwing McGhee's body in the river and attempting to set the house on fire.

At trial, Martin testified that he and McGhee had been close friends since childhood and, in the summer of 2012, they were sharing a house that McGhee had rented in DeKalb County. On July 29, 2012, according to Martin, McGhee returned to the house around 4:30 or 5:00 a.m., after a long night of partying and imbibing alcohol and synthetic marijuana. In a rage, McGhee accused Martin of being involved with his (McGhee's) girlfriend. Martin went into the bathroom to de-escalate the situation, and, when he came out, McGhee came up behind him, put a pillow case or towel around his neck, threatened to kill him, and choked him until he blacked out. When Martin regained consciousness, lying on the floor in the hall, he saw McGhee lying on his bed, holding a knife. A pistol was within McGhee's reach on the floor by the bed, and a rifle was on the bed. Martin testified that McGhee was a long-time member of the Bloods

gang, with the rank of "general," and had a reputation for violence. Thinking that McGhee had "snapped" and tried to kill him with the towel, and thinking about McGhee's violence toward other people, Martin wanted to flee but believed that McGhee would not allow him to leave. Martin testified that he reached for the pistol to protect himself, McGhee reached for the rifle, and Martin fired a shot that struck McGhee in the head. Martin testified, "It was self-defense and I did not have a choice," and, "it wasn't about anger. I had no choice but to defend myself." Martin decided to conceal McGhee's death, because he was afraid of retaliation by the Bloods gang.

Evidence that, in the days before the shooting, Martin threatened to kill McGhee in connection with a financial dispute they were having about car repairs, that he took extreme measures to destroy and conceal evidence of the shooting and to evade the police, that he had no defensive wounds when he was arrested a few days after the shooting, and that he tried to shift the blame to unknown intruders undermined Martin's claim of self-defense. The jury, as the sole arbiter of witness credibility, was entitled to

7

discredit Martin's testimony that he shot McGhee in self-defense after McGhee choked him and to find him guilty beyond a reasonable doubt of felony murder, predicated on aggravated assault. *Ferguson v. State*, 297 Ga. 342, 344 (1) (773 SE2d 749) (2015) (the jury was authorized to disbelieve the unrebutted testimony of the defendant that he stabbed two victims in self-defense); *Sapp v. State*, 273 Ga. 472, 473 (543 SE2d 27) (2001) (the jury was authorized to discredit the defendant's testimony and find, based on his behavior before the shooting, an obscene comment he made about the victim, and his actions afterwards, that he possessed the requisite malice when he shot and killed the victim). Martin's sufficiency argument as to felony murder fails, and the evidence was sufficient as to the other crimes of which he was convicted. See *Jackson*, 443 U. S. at 319.

2. Martin contends that the trial court erred in allowing the State to impeach him with evidence that he had a prior conviction for theft by receiving a firearm. He argues that, because the indictment contained eight counts of possession of a firearm, the prior-conviction evidence made it appear that he "was prone to carry

8

firearms."

The record shows that, during cross-examination, the prosecutor asked Martin whether he had been convicted in 1997 of theft by receiving a stolen firearm. He answered, "seventeen years ago, that was true." The prosecutor asked no additional questions about that conviction and made only a glancing reference to the conviction during closing argument. Assuming without deciding that the trial court improperly admitted the conviction at issue over objection, that error was harmless and does not require reversal. "A nonconstitutional error is harmless if it is highly probable that the error did not contribute to the verdict." *Jones v. State*, 305 Ga. 653, 657 (3) (827 SE2d 254) (2019) (citation and punctuation omitted). Here, Martin admitted that he shot McGhee; there was no evidence that corroborated his testimony that McGhee had a history of gang violence or his testimony that McGhee choked him and tried to kill him; there was evidence of a recent dispute between the men and evidence that Martin stated that he would kill McGhee; and there was substantial evidence of Martin's consciousness of guilt. In light

of the evidence, we conclude that it is highly probable that the outcome of the trial would have been no different if Martin had not admitted on cross-examination that he was convicted in 1997 of theft by receiving a stolen firearm. See *Jones*, 305 Ga. at 657 (3) (any error in admitting evidence of the defendant's prior conviction for making false statements to police was harmless in light of evidence that the defendant admitted that he shot the murder victim, no witness substantiated his self-serving claim of self-defense, and there was no evidence that the victim had a gun or that a second gun was fired); *Dennard v. State*, 305 Ga. 463, 466-467 (2) (826 SE2d 61) (2019) (any error in admitting felony convictions for possession of cocaine, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony was harmless in light of evidence that the defendant had previously been violent with the murder victim, was angry with her because he had been unable to see his children on the day of the murder, had accused her of visiting other men and followed her as she tried to leave, and shot her numerous times at close range after a brief exchange of words).

3. Martin contends that the trial court erred in failing sua sponte to give curative instructions after the prosecutor in her closing argument repeatedly characterized Martin's eyewitness account of the events surrounding the victim's death as "lies" and Martin as a "liar." He argues that the prosecutor improperly urged her personal beliefs as to his guilt and truthfulness. He contends he was harmed by these statements because his sole defense was justification and the issue of his guilt or innocence hinged on his credibility.

"In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) (citations and punctuation omitted). Because, as Martin concedes, the defense did not object at the trial to the comments by the prosecutor that he now challenges, this argument is waived. But, even absent procedural waiver, this claim of error lacks merit.

A closing argument is to be judged in the context in which

it is made. What is more, a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.

*Scott*, 290 Ga. at 885 (2) (citations omitted). "The wide leeway given to argue all reasonable inferences that may be drawn from the evidence during closing argument encompasses pointing out inconsistencies in a defendant's testimony and urging that, on that basis, the defendant lied." *Appling v. State*, 281 Ga. 590, 592-593 (5) (642 SE2d 37) (2007) (citations omitted). See also *Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004) ("While it is improper for counsel to state to the jury his personal belief as to the veracity of a witness, it is entirely proper for counsel to urge the jury to deduce such a conclusion from proven facts." (citation and punctuation omitted)). The prosecutor's characterization of Martin as a liar was embedded in her argument summing up numerous discrepancies between his version of events and the physical evidence and evidence of his conduct before and after the crime. As

such, the comments cited by Martin as improper and prejudicial were within the ambit of permissible closing argument by the prosecutor. *Scott*, 290 Ga. at 885 (2); *Appling*, 281 Ga. at 592-593 (5); *Robinson*, 278 Ga. at 36 (3) (c).

4. Martin contends that, because he was the sole eyewitness and his in-court and out-of-court statements were relied upon for the State's case-in-chief and his sole defense, the trial court erred in failing to instruct the jury on the legal differences between a "statement," an "admission," and a "confession." He argues that a statement that includes facts or circumstances that show excuse or justification is not a confession of guilt even if it admits the main fact. He contends that, during the charge to the jury, the court improperly instructed the jury that it should be "cautious" about receiving any statement made by him and failed to properly instruct the jury in how to receive and view his out-of-court statements and in-court testimony.[4]

---

[4] See *Campbell v. State*, 292 Ga. 766, 769 (3) (740 SE2d 115) (2013) (noting that former Suggested Pattern Jury Instructions, Vol. II: Criminal

Martin did not request a jury instruction regarding the legal differences between a "statement," an "admission," and a "confession" and did not object to the jury charge as given. This Court's review of these claims is therefore for plain error only. See OCGA § 17-8-58 (b) (providing that the failure to object regarding a jury instruction at trial precludes appellate review unless "the jury charge constitutes plain error which affects substantial rights of the parties"); *Hood v. State*, 303 Ga. 420, 425-426 (2) (a) (811 SE2d 392) (2018); *State v. Kelly*, 290 Ga. 29, 32 (718 SE2d 232) (2011).

> To show plain error, [the appellant] must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

---

Cases § 1.32.60 (Jan. 2013), which included the instruction that the jury "should consider with great care and caution the evidence of any statement made by the Defendant," had been deleted from the pattern jury instructions because the issue was adequately covered by other charges); *McKenzie v. State*, 293 Ga. App. 350, 353 (3) (667 SE2d 142) (2008) (noting that, because OCGA § 24-3-53 requires "admissions" to be scanned with care and "confessions of guilt" to be received with great caution, jury instructions based on this principle should refer to a defendant's incriminatory statements only, not to a defendant's statements generally).

14

*Hood*, 303 Ga. at 425-426 (2) (a) (citations and punctuation omitted).

The record does not support Martin's assertion that the court instructed the jury that it should receive his statements with caution. The record also does not show that the trial court ever referred to Martin's statement as a "confession." Rather, the record shows that, after the trial court instructed the jury on how to evaluate the credibility of witnesses generally and how to determine whether it was authorized to consider any statement by the defendant, the court instructed the jury to apply the general rules for testing the believability of witnesses and for deciding what weight, if any, to give to all or any part of a statement.[5] Martin has

---

[5] The court instructed the jury that, before considering any statement by the defendant as evidence, the jury must determine whether the statement was voluntary and, if the statement was given in police custody, whether the defendant was properly advised of his constitutional rights to remain silent and to consult with counsel and whether the defendant clearly understood and knowingly gave up such rights, and the court explained the circumstances to be considered in making these determinations. The court then charged the jury:

> If you find, as [previously explained], that the defendant's statement was voluntary and that all of the warnings as [to] the defendant's constitutional rights were given and that the defendant did understand the meaning of what was said and knowingly gave up such rights, then you may consider it as

15

not shown any error, much less plain error that affected the outcome of the proceedings. *Givens v. State*, 294 Ga. 264, 268 (3) (751 SE2d 778) (2013); *Lake v. State*, 293 Ga. 56, 59 (5) (743 SE2d 414) (2013); *Tucker v. State*, 237 Ga. 740, 740-741 (1) (229 SE2d 749) (1976).

5. Martin contends that, based on the evidence presented at trial, the trial court committed plain error in failing sua sponte to charge the jury on manslaughter. He argues that any indictment that charges murder or felony murder also charges manslaughter.

Again, in the absence of a request for a jury instruction, this Court's review is for plain error only. See Division 4, supra. Martin's sole defense was justification. Voluntary manslaughter requires that the accused be "so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself." *Blake v. State*, 292 Ga. 516, 518 (3) (739 SE2d 319) (2013) (citation

evidence[.] If so, you must apply the general rules for testing the believability of witnesses and decide what weight, if any, you will give to all or any part of such evidence. If you fail to find that the defendant was properly given information about these rights and that he understood and gave up those rights, then you must disregard the statement entirely and give it no consideration in reaching your verdict.

and punctuation omitted). See also *Worthem v. State*, 270 Ga. 469, 471 (2) (509 SE2d 922) (1999) ("the provocation necessary to support a charge of voluntary manslaughter is markedly different from that which will support a self-defense claim" (punctuation and footnote omitted)). Martin testified adamantly that he shot McGhee in self-defense and that "it wasn't about anger." And there was no other evidence that Martin acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation.[6] The evidence therefore did not support a charge on voluntary manslaughter. *Blake*, 292 Ga. at 518 (3) (where a murder defendant testified unequivocally that he shot the victim "in self-defense, out of fear for his life[,]" and there was no other evidence supporting a verdict of voluntary manslaughter, the trial court did not err in refusing to give a requested instruction on voluntary manslaughter); *Jackson v. State*, 282 Ga. 494, 498 (4) (651 SE2d 702) (2007) (where

---

[6] See OCGA § 16-5-2 (a) ("A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]").

17

a murder defendant testified that he "was just fighting for [his] life" and that, in doing so, he panicked and shot the victim "out of self-defense," evidence did not show that he was so angered that he reacted passionately, and the trial court did not err in refusing to give a requested instruction on voluntary manslaughter). Also, Martin admitted that he shot McGhee intentionally, albeit in self-defense, and there was no other evidence supporting a verdict of involuntary manslaughter. Therefore, the evidence did not support a charge on involuntary manslaughter under OCGA § 16-5-3.[7] *Williams v. State*, 301 Ga. 712, 718 (5) (804 SE2d 31) (2017); *Harris v. State*, 272 Ga. 455, 456-457 (3) (532 SE2d 76) (2000). Because there would have been no error in refusing to give requested manslaughter jury instructions, the failure to give them sua sponte was not plain error. *Kelly*, 290 Ga. at 34 (2) (b).

---

[7] See OCGA § 16-5-3 ("A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. . . . A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm. . . .").

6. Martin contends for the first time on appeal that he received ineffective assistance of counsel in several respects. Martin's new post-conviction counsel, however, did not raise a claim of ineffective assistance of counsel in the original motion or amended motion for a new trial or at the hearing on the motion, and the trial court did not rule on any such claim in denying his motion for a new trial. Because such a claim must be raised at the earliest practicable moment, and Martin raised the claim for the first time on appeal, the claim of error is waived. *Carter v. State*, 289 Ga. 51, 52 (2) (709 SE2d 223) (2011) ("[B]ecause [the appellant] did not raise any ineffectiveness claims in his motion for new trial, despite the fact that he had new appellate counsel before filing his amended motion for new trial, he has waived these contentions on appeal." (citation omitted)). See *Williamson v. State*, 305 Ga. 889, 897 (4) (827 SE2d 857) (2019) (denying motion to remand for a hearing on an ineffectiveness of counsel claim raised for the first time on appeal, because the appellant's new post-conviction counsel had amended the appellant's pending motion for a new trial and failed to raise the

claim in the amended motion so that it could be heard at the earliest practicable moment).

7. The trial court imposed a separate sentence for each count of possession of a firearm by a convicted felon. OCGA § 16-11-131 (b) provides: "Any person . . . who has been convicted of a felony by a court of this state . . . and who receives, possesses, or transports any firearm commits a felony, and upon conviction thereof, shall be imprisoned for not less than one nor more than five years[.]" As we explained in *Coates v. State*, 304 Ga. 329, 331 (818 SE2d 622) (2018), the gravamen of the offense is the general receipt, possession, or transportation of firearms by convicted felons, rather than the specific quantity of firearms received, possessed, or transported. Therefore, OCGA § 16-11-131 (b) "permits only one prosecution and conviction for the simultaneous possession of multiple firearms." *Coates*, 304 Ga. at 331-332 (footnote omitted). Martin's possession of a handgun when he shot McGhee on July 29, 2012, was not simultaneous with his possession of the long guns on August 2, 2012, when he carried them from the house and hid them in the overgrown

area of the back yard. But Martin possessed all six of the long guns simultaneously, so the six counts of possession of a firearm by a convicted felon involving the long guns merged for purposes of sentencing. Id. Accordingly, we vacate Martin's convictions and sentences for those counts (Counts 9 through 14), and remand this case for the trial court to resentence him on only one of those counts.

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.*

DECIDED AUGUST 19, 2019.

Murder. DeKalb Superior Court. Before Judge Jackson.

Hajja K. Martin, *pro se.*

*Sherry Boston, District Attorney, Deborah D. Wellborn, Gerald Mason, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General*, for appellee.